## Taylor v. Mullins.

(Decided January 17, 1913.)

### Appeal from Pike Circuit Court.

1. Fraud—Misrepresentation—When Relievable in Equity.—A misrepresentation constitutes fraud relievable in equity only when: (a) it is untrue; (b) the party making it knew, or should have known, it to be untrue, and it was made by him to induce the other party to act, or omit to act; (c) it induced the other party to act, or omit to act; and (d) it is a material fact.

2. Finding of Chancellor.—Where the evidence is conflicting, and the mind is left in doubt as to the truth, a finding of fact by the chancellor will not be disturbed upon appeal.

CHILDERS & CHILDERS, for appellant.

STRATTON & STEPHENSON, for appellee.

OPINION OF THE COURT BY JUDGE MILLER—Affirming.

Appellee Mullins having contracted with the Yellow Poplar Lumber Co. to cut, saw, haul to and place in Russell's Fork of Sandy River the timber on the company's Camp Branch Tract in Dickerson county, Va., sublet the contract for hauling the logs, in May, 1909, to appellant Taylor, and his partner Belcher, for two cents per cube. Mullins had himself done quite a good

deal of the hauling at the time he sublet that portion of the contract to Taylor & Belcher, and they, in order to equip themselves for the work, bought from Mullins five mules for which they gave their note for $900.00. They also bought Mullins' logging outfit. The logs were to be measured on the skidway before they were trucked, and Taylor & Belcher were to receive the same measurements that Mullins received in his settlement with the lumber company.

Taylor & Belcher ran an account for supplies at Mullins' store while they were hauling the logs. Taylor and Belcher dissolved their partnership in July, by Taylor buying Belcher's interest therein. At this time the store account amounted to about $800.00. In August Taylor became dissatisfied with his contract, and sold his interest therein to Mullins for $600.00, Taylor to pay his own outstanding debts. By this time the store account had grown to about $1,200.00. As a part of the trade Mullins took the mules back, and surrendered to Taylor the $900.00 note which represented the purchase money for the mules. Taylor, however, was unable to pay all of his outstanding accounts, and among these unpaid accounts was one for $43.65 due R. T. Elswick & Co. for merchandise. These goods had been purchased by Taylor & Belcher, who got the full benefit of the purchase, though the goods were charged to Mullins. Elswick & Co. sued Mullins for the $43.65, and obtained a judgment therefor; whereupon Mullins brought this action against Taylor in the Pikeville Police Court to recover the $43.65. Taylor answered, admitting his firm had received the merchandise from Elswick & Co., but set up a counterclaim for $1,230.00, for loss and damage under his logging contract with Mullins above referred to. The substance of the counterclaim is: (1) that instead of owing Mullins $800.00 upon the store account at the time Belcher sold out to Taylor, they really owed Mullins only $500.00 on that account, and that all amounts over and above $500.00 was a false charge; (2) that although they surrendered the mules and received their note for $900.00, Mullins, nevertheless, charged them with the $900.00 in the final settlement, thereby receiving pay for the mules, although they had been returned to him; and, (3) that Mullins represented to them that the timber only measured 42½ cubes to the log, on an average, and settled with them on that basis, while said timber, in reality, averaged 50 cubes to the log; "and the plaintiff

wrongfully and fraudulently represented to them that said timber only contained 42½ cubes to the log, for the purpose of cheating them out of 15 cents on each log hauled, and did thereby cheat and wrong them out of 15 cents on each log they so hauled, amounting in all to 2,200 logs, and thereby cheated them out of $330.00, which amount is just, due and owing to the defendants by plaintiff." The counterclaim prays judgment for $1,230.00, which evidently represents the $900.00 for the mules, and $330.00 as the loss on the 2,200 logs at 15 cents per log. The prayer of the counterclaim seems to ignore the claim for $300.00, alleged overcharge upon the merchandise account first above referred to.

Upon the filing of the counterclaim, which took the case out of the jurisdiction of the Pikeville Police Court, it was transferred to the Pike Circuit Court, where it was referred to the Master Commissioner to take proof, and make and report a settlement between the parties. The Commissioner took a large amount of proof and filed his report, by which he found that Mullins owed Taylor $245.68 upon the counterclaim. Exceptions were filed to the report by both parties; and, upon a trial by the chancellor, he gave Mullins a judgment against Taylor for $16.54, and from that judgment Taylor prosecutes this appeal.

In the first place, the judgment of the chancellor might well be affirmed, upon the ground that the counterclaim did not state a cause of action against the appellee. It sought to open the settlement, upon the ground of fraud; and the only allegation of fraud is that quoted above, which merely alleges that Mullins wrongfully and fraudulently represented to Taylor & Belcher that the timber contained only 42½ cubes to the log, when it really averaged 50 cubes to the log, and that this statement was made for the purpose of cheating Taylor & Belcher out of 15 cents on each log hauled, and that it did so cheat them.

It is a well settled rule of equity that a misrepresentation constitutes fraud relievable in equity only when, (a) it is untrue; (b) the party making it knew, or should have known, it to be untrue, and it was made by him to induce the other party to act or omit to act; (c) it induced the other party to act or omit to act; and (d) it is a material fact.

Or, as the rule was stated is Livermore v. Middlesboro Towns Land Co., 106 Ky., 163:

"To establish actionable fraud, or fraud against which equity will relieve—and, as we have seen, the same rule applies in Kentucky to both classes of cases— it must appear that the misrepresentation was of a matter of material fact (as distinguished from opinion), at the time or previously existing (and not a mere promise for the future); must be relied upon by the person whose action is intended to be influenced; and must be made with knowledge of its falsity, or under circumstances which did not justify a belief in its truth. This is the doctrine deducible from the Kentucky decisions. There are some modifications of this doctrine, but they are chiefly by way of substitution of an equivalent for some one of the essentials necessary to constitute fraudulent misrepresentation; as in the cases where it is held that a fraudulent concealment of a material matter of fact is the equivalent of an actual misrepresentation, and the cases in which a statement made as of personal knowledge, but without knowledge, was held to be equivalent to a statement whose falsity was known."

This rule was recognized and enforced in The Chicago Building & Manufacturing Co. v. Beaven, 149 Ky., 273.

The counterclaim under consideration fails to allege that Taylor relied upon the representation of Mullins, or that he was induced thereby to act upon said representation; and, that being true, it stated no ground for opening the settlement.

Furthermore, the evidence did not sustain the charge of fraud, even though it be treated as having been sufficiently made. The counterclaim is based upon a claim that Taylor hauled 2200 logs, while he, in his own testimony, admits that he put only between 800 and 900 logs in the river. Mullins testifies that about 1500 logs had to be hitched to and hauled out in order to be put in floating water. Mullins further says that appellant hauled 2112 logs; that 76 were left on the skidway; 2036 were trucked; that only about 500 were put in the river, and about 1500 had to be hitched to to get them into the river. It will thus be seen that from 500 to 800 logs were in the river, and that of the remainder many were wrecked off the track, were piled up behind rocks, and had to be hauled out before they could be put into the river, and thus comply with the contract. Of course, this was expensive, and its cost was a proper charge against appellant.

It is clear, beyond any question, that upon the return

of the mules to Mullins, he surrendered Taylor his note for $900.00. The only issue that remained for settlement related to the logging contract, and the alleged overcharge in the store account. The weight of the testimony sustains the finding of the chancellor upon these issues. The testimony is quite contradictory; and, under the rule, which requires us to give due weight to the chancellor's finding of fact under conflicting evidence, and not to disturb his judgment on the facts where the evidence is conflicting, and the mind is left in doubt as to the truth, we do not feel justified in disturbing it. Kirkpatrick's Exor. v. Rehkopf, 144 Ky., 134; Norris v. Isaacs, 149 Ky., 711; Wilson v. Ward, 151 Ky., 233.

Judgment affirmed.