## Waller v. Hodge, et al.

(Decided May 25, 1926.)

### Appeal from Henderson Circuit Court.

1. Corporations—Director or Managing Officer of Private Corporation May Purchase Stock from an Individual Stockholder on Practically Same Terms as if Stranger.—Director or managing official of private corporation is not in confidiential relationship with each stockholder in respect to stock, but may deal with individual stockholder for purchase of stock practically as if stranger.

2. Corporations—Purchase of Stock by Director or Managing Officer Will Not be Set Aside for Failure to Disclose Information Affecting its Value, in Absence of Actual Fraud.—Purchase of stock by director or managing officer of corporation from individual stockholder will not be set aside for mere failure to disclose information affecting value of stock, in absence of actual fraud.

3. Corporations—Officer of Corporation Purchasing Stock Must Answer Questions of Stockholder Truthfully, but Need Not Volunteer Information Concerning Value.—Officer of corporation, in dealing with stockholder for purchase of stock, is bound to give truthful answers to questions concerning condition of corporation, if knowledge is within his grasp, but he need not volunteer information concerning company's stock or dividends.

4. Corporations.—Purchase of stock by director and managing officer of corporation from stockholder, making no effort to learn its actual value at time of transaction, held not fraudulent under evidence.

5. Trial.—Under Civil Code of Practice, section 12, either party to equitable action may by motion have case transferred for trial of any issue concerning which he is entitled to jury trial.

6. Trial—Either Party in Equitable Action May Require Every Equitable Issue to be Disposed of Before Transfer to Ordinary Docket for Jury Trial of Any Issue.—In equitable action, where, on motion, case is transferred to ordinary docket for jury trial of any issue,

either party may require every equitable issue to be disposed of before such transfer.

7. Trial—In Action for Rescission on Ground of Fraud, where Chancellor Decided there was no Fraud, Motion for Issue Out of Chancery could Not be Sustained (Civil Code of Practice, Section 12).—In action for rescission of contract for sale of corporate stock on ground of fraud, where chancellor decided there was no fraud, there was no question of fact for the jury, and, therefore, refusal of motion for issue out of chancery, under Civil Code of Practice, section 12, held proper.

HENSON & TAYLOR and T. S. WALLER, JR., for appellant.

JOHN C. WORSHAM for appellees.

OPINION OF THE COURT BY JUDGE SAMPSON—Affirming.

In 1917, appellant, Waller, then owner of 127 shares of the capital stock of Audubon Mining Company, sold his entire holding to appellees, Thomas Hodge and John Hodge, for $8,000.00, par value $12,700.00. The company is and was engaged in mining and marketing coal. It was organized under the name of People's Coal Company, about 1908 or 1909, and produced coal for the local market only and made its deliveries by wagon. Neither of the parties to this litigation was interested in the company at that time but about 1916 appellant, Waller, on the advice of his friend, McDonald, an attorney of Henderson, purchased stock and appellees, Hodge Brothers, also acquired interests. The mine was not on the railroad and had no shipping facilities. It had never declared a dividend except in 1912, when through mistake it declared a four per cent dividend, later discovering that the money which paid the dividends of 4% on its then capitalization of $22,000.00 should have been applied to the payment of its current bills and money was borrowed by the company to meet those bills. The officials in charge of the company, except such as devoted their time exclusively to work about the mines, received no salary. After acquiring stock appellant Waller was made a director of the company and he was later employed by the company as secretary and treasurer, and placed in charge of its financial operations. He continued in this position for a year or more, when, because of some disagreement between him and Hughes, the mine

foreman, appellant resigned as secretary and treasurer, but continued as a director until August or September of the same year. After leaving the Aububon Company, he took employment with another coal company, some forty miles away, and continued in the coal business part of the summer of 1917. The World War coming on he enlisted for overseas service, taking training at Fort Benjamin Harrison, consequently was anxious to sell his stock in the coal company. He communicated with his friend, McDonald, at Henderson, who had advised him to purchase the stock, and McDonald approached appellee, John Hodges, to know if he would like to buy the Waller stock and received a reply that he would if the price was right. Waller asked how much he would give for the 127 shares and John Hodges answered he would pay $7,500.00. McDonald submitted this proposition by letter to Waller at Fort Benjamin Harrison, Indianapolis. Waller proposed to take $8,000.00 for his stock, and negotitations were in course for about three weeks, when on October 27, 1917, Waller transferred his stock in the Aububon Coal Company to appellees, John Hodges and Tom Hodges, for $8,000.00. This suit was instituted by Waller about five years later against Hodge Brothers for a cancellation of the contract and a restoration of the stock; or, if this could not be done, for a recovery of damages on the grounds of alleged fraud and misrepresentation on the part of appellees, who were directors of the company, and thus induced appellant, Waller, to part with his stock in the company and but for which he would not have sold the stock for the price of $8,000.00, it being, as he now avers, worth some $30,000.00 at that time. The Hodges answered and denied the fraud and misrepresentation charged in the petition and averred that they purchased the stock of appellant, Waller, at its full value at that time, making no representations as to its value and concealing no fact from Waller and his agent, McDonald, through whom the deal was made. Two large volumes of evidence were taken and the case submitted. Motions were made by appellant for a transfer of certain issues to the common law docket for trial, or for an issue out of chancery. This motion was overruled. The court then adjudged Waller had failed to sustain the averments of the petition as amended and dismissed his cause. Waller then moved for a separate finding of

fact and law, which motion was sustained, and the court made the following finding:

> "I find the fact to be that the negotiations for the purchase and sale of this stock were conducted through Mr. E. L. McDonald, the personal friend and attorney for the plaintiff; he received no fee or commission for his services from either party and he claimed none from either. I find he was a friendly intermediary only and not an agent of either party.

> "I find the plaintiff had been the general manager of the coal property in question and actually at its plant every day directing and controlling its business and operation for a year preceding June, 1917 (the year in which the sale was made); that he was a member of the board of directors of the company until September, 1917, and attended a meeting of the board in that month; that the defendants never had the intimate knowledge of the property nor of its business nor of the possibilities of its property nor of its business that plaintiff had when he sold his stock (though he had been away from it for a few months); that plaintiff had full knowledge of the character and extent of the improvements ordered to be made to the plant during the year 1917, and that, comparing the knowledge of the business and the coal experiences of the plaintiff and the defendants, he had better opportunities to know whether these improvements would increase the prospect of the company to succeed financially; that the only material fact the defendants had knowledge of that the plaintiff did not know when the deal was made, is that the company on that date and for six weeks or two months before had earned substantial profits which put it in a position to begin to pay its debts, then long past due; that, at the time the deal was made, the conditions of the coal market were good and that it was certain that, so long as the conditions remained unchanged, the company would earn profits never before experienced by it; that the length of time this condition of the market would continue was entirely speculative and would depend upon: (1) the amount of wages to be paid miners and other employees, (2) whether sufficient miners would be exempted by the exemption

boards, then beginning to operate, to permit mines to produce sufficient coal to operate profitably, (3) whether the fuel administration, then proposed and practically certain, would impose reasonable regulations and fix the prices to be received by mines high enough to enable them to operate at a profit, (4) whether the war would continue for a long or short time, (5) whether business would remain good or collapse in either event the continuation or the cessation of the war, and, of course, many other contingencies. That with these possibilities in mind, the value of the stock at the time the deal was consummated was uncertain and the price the defendants paid plaintiff was not grossly inadequate.

"I find the fact to be that during the negotiations the plaintiff made no effort to inform himself as to either the value of the property, the condition or operation of the mine, the effect of the new improvements upon its output or profits, or of the condition of the coal market, if he was not informed of and of them.

"Taking the plaintiff's evidence as true and not considering the contradiction thereof by the defendants, I find the only representations of the defendants ever communicated to the plaintiff by Mr. McDonald are, in substance, that the plaintiff need not expect to receive any dividends on his stock, that there would be none, because the company would appropriate to the payments of salaries all the earnings.

"I find that it is not proven that the defendants stated either that the company was in an embarrassed financial condition or that the directors had voted to pay the officers increased salaries, or that the stock of the plaintiff was worth not exceeding $8,000.00.

"I find these statements, or representations, shown by plaintiff's evidence to have been made by defendants to Mr. McDonald and by him communicated to plaintiff, were not statements or representations of facts then or theretofore existing. They amount to no more than a threat or a prediction as to the future action of the company, against the illegal performance of which the plaintiff had his ample remedy.

"I find the law to be:

"Gross inadequacy of consideration—such inadequacy as shocks the chancellor's conscience at first blush—coupled with slight fraud is sufficient to justify the cancellation of an executed contract. 9 C. J. 1176; Havlin v. Reed, 9 R. 552; Anderson v. Anderson, 194 Ky. 763, 240 S. W. 1061.

"In the absence of gross inadequacy of consideration, where the parties deal at arm's length and no confidential relations exist, to establish actionable fraud, 'It must be proved that the misrepresentation was of a matter of material facts (as distinguished from opinion) at the time or previously existing (as distinguished from a mere promise for the future); must be relied upon by the persons whose action is intended to be influenced; and, must be made with knowledge of its falsity, or under circumstances which do not justify a belief in its truth.' Livermore v. Middlesborough Town Lands Co., 106 Ky. 163, 20 R. 1704 (where there is an exhaustive review of the authorities on this subject); Taylor v. Mullins, 151 Ky. 597, 152 S. W. 774. These constituent elements must be clearly proved and the fraud must be so proved before cancellation of an executed contract should be granted by the court. Va. Iron Coal Coke Co. v. Crigger, 201 S. W. 298, 179 Ky. 748; Cole v. Young, 181 S. W. 177, 167 Ky. 600. Proof of such alleged fraud must be so clear that it will overcome the presumption of innocence and fair and honest dealing which the law extends to every man.

"The defendant, as director of the company, occupied a fiduciary relation to the company and to each stockholder while they were acting in their official capacity for the company or in doing those things they were expected to do for the protection of the company's interest. But, they occupied no confidential or fiducial relation to the plaintiff in the transaction in which they purchased from him his interest in the company; they then dealt at arm's length; they were not required to speak, but only if they spoke to speak the truth."

The court also delivered a well reasoned opinion and it is made a part of the record. From the judgment entered this appeal is prosecuted by Waller.

Briefly summarized, the evidence is as follows: Appellant, Waller, testified that while he was at the Military training camp in Indianapolis, he received a letter from his friend, McDonald at Henderson, submitting the proposition of Hodge Bros. to purchase his stock from the coal company at $7,000.00, but that he made a counter proposition in which he offered to take $8,000.00; that he did not know at that time the value of the coal property or the value of his stock, he having retired from the company on the 2nd of June theretofore; that Hodge Bros. did not inform him of the plan which they had in mind of developing the coal property so as to make it earn profits, and, that he did not have opportunity to visit the coal mine and did not visit it until after the stock had been sold. He admitted, however, that his connection with the coal company for the year previous to June, 1917, had given him an insight into the conditions of the mine and afforded him a knowledge of the financial condition of the company and the value of its properties. He further admitted that before he left the company and while he was acting as secretary and treasurer the company made arrangements to increase its output of coal by making a track connection with the railroad so as to have shipping facilities, and had bought two or more coal mining machines operated by electricity and had contracted for and planned the development of a new coal acreage lying adjacent to the old mine, but that none of this work had been accomplished at the time he left the company; that the company was badly in debt and all the new improvements which the company was about to make were on borrowed capital and that Hodge Bros. were indorsing paper for the company. He also admitted he continued in the coal business for some time after he left the Audubon Company and was familiar with the rising market price of coal which was precipitated by war conditions, but he says he did not know about the profits the Audubon Company were earning at the time he sold his stock. He further stated that with McDonald's letter submitting the proposition of Hodge Bros. to purchase his stock he received information that appellee, Thomas Hodge, had stated that the company would not earn or pay any dividends and no dividends should be expected by Waller from his stock; that the officers of the company and those who worked for the company were to receive the benefits of the profits that came by

reason of the operation of the mines; that the financial condition of the company was bad; that relying upon these statements of appellee, Thomas Hodge, he decided that if he was not going to receive any dividends from his stock that he had better sell it at the best price he could get, and did consent to take $8,000.00 therefor when it was worth, as he has since learned, about $30,000.00 aside from the dividends it has since earned. McDonald was called as a witness for Waller and testified that he had a conversation with appellees concerning the purchase of the stock of Waller and they first offered him $7,000.00 for the stock and later increased it to $7,500.00, and finally agreed to pay $8,000.00 for it; that Hodge Bros. came to his office more than one time during the negotiations but that they gave him no information as to the true condition of the mine but told him in substance that the financial condition of the company was bad; that there would be no dividends on stock and that Waller need not expect any; that they intended to take care of those who gave their time to the company and if the company made profits the same would be turned into salaries and paid to those who worked at the time, including the officers, and asked him to communicate these facts to appellant, Waller; that he did communicate these representations to Waller and Waller agreed to accept the price of $8,000.00. Neither McDonald nor appellant, Waller, produced any of the letters or communications passing between them concerning the stock deal. Appellant, Waller, introduced some other witnesses, but their evidence chiefly related to the value of the property of the Audubon Coal Company and the profits made from coal during the years 1917 and 1918. Both John and Thomas Hodge testified for themselves, stating that they did not approach McDonald about purchasing the Waller stock, but, on the contrary, McDonald approached John Hodge and offered to sell him the stock, or rather asked him if he would be interested in the purchase of it, and receiving an affirmative reply with an offer of $7,500.00 for the 127 shares, stated he would transmit the proposition to appellant, Waller, at the training camp and later returned with a counter proposition of $8,000.00, and that after the negotiations had continued for about three weeks the Hodges agreed to purchase the stock at the price of $8,000.00; that they made no representations as to dividends likely to be earned by the stock nor as to the finan-

cial condition of the company and did not say that Waller could not expect dividends or that the profits, if any, earned by the company would be paid to the officers and employes about the mines. In fact, they denied *in toto* the evidence of McDonald and Waller concerning representations as to the value of the stock and its likelihood to earn dividends and as to the financial condition of the company. The evidence also shows that appellee, Thomas Hodge, went to New Zealand in April, 1917, and did not return until the latter part of October and long after the negotiations for the purchase of the stock had been instituted; that he did not communicate in any way with appellant, Waller, or his friend, McDonald, concerning the stock. Waller and McDonald admitted that they made no effort to find out the value of the stock in the Audubon Coal Company before the sale, nor did they attempt to find out what the company was earning or whether it was making money. Hodge Bros. say they concealed no fact from appellant and that he made no inquiry concerning the earnings of the company or its financial condition or the value of its stock of anyone connected with the company, to their knowledge.

It is appellant's contention that a duty rested upon appellees, Hodge Bros., who were officers and directors of the coal company, in dealing with a stockholder of the corporation, to disclose to him the true situation with respect to the company, its financial condition, its earnings and prospects of business, together with the company's plans for development; that there was a fiducial relation existing between the Hodge Bros. as directors and officers of the company, on the one hand, and appellant, Waller, as stockholder, upon the other, and they contended that appellees were not in position to deal with appellant at arm's length, and they rely upon the cases of Reinhardt v. Owensboro Planing Mill Company, 185 Ky. 600; Haldeman v. Haldeman, 176 Ky. 635, and the case of Oliver v. Oliver (Ga.), 45 S. E. 232; Stewart v. Harris, 69 Kans. 498, as supporting their contention that directors and managing officials of private corporations are bound to exercise nothing short of the *uberrima fides* of the civil law and must not allow their official conduct to be swayed by their private interests or welfare and must not profit in the purchase of stock at the expense of the shareholder, and such officials are *quasi* or *sub modo* trustees for the corporation with respect to the corporate prop-

erty, and they are *quasi* or *sub modo* trustees for the stockholders with respect to their shares of stock.

On the other hand appellees insist that no fiduciary relation existed between them as officers and directors of the corporation and appellant, Waller, as a stockholder in the sale of the stock. The general rule upon the subject is thus stated in 7 R. C. L., pp. 459 and 460: "The management of the business and property of a corporation is intrusted to its officers, and they are empowered to act for the whole body of stockholders. They therefore occupy the position of *quasi* trustees for the stockholders as a body in respect to such business and property and cannot have or acquire any personal or pecuniary interest in conflict with their duty as such trustees. A director, however, does not sustain that relation to an individual stockholder with respect to his stock, over which he has no control whatever, but he may deal with an individual stockholder and purchase his stock practically on the same terms as a stranger. And according to the prevailing view in the absence of actual fraud, such a purchase will not be set aside for a mere failure to disclose any information the director may have affecting the value of the stock."

While courts are not in absolute harmony on the subject a majority of them take the view that an officer of a corporation in dealing with a stockholder is obliged to give truthful answers to such questions as the stockholder may ask concerning the condition of the corporation if the knowledge be within his grasp, and he undertakes to answer, but unless the stockholder makes inquiry of the director or officer of the company concerning facts connected with the company affecting his stock, the officer is not obliged in dealing with the stockholder, even for the purchase of his stock, to disclose to the stockholder the condition of the company or the value of the stock, but if he undertakes to tell the stockholder the value of the stock, the dividends paid or to be paid and the earning power of the corporation, he must adhere to the truth, else he will be liable for resulting loss or damage to the stockholder. He need not, however, volunteer information concerning the company or the value of its stock or its earning power, although such information is at hand. If the stockholder desires to know the condition of the company, the value of the stock or the prospects of dividends, he should make inquiry of the proper offi-

cial, and then it becomes the duty of that official to disclose the facts truly to the stockholder. In the instant case it is not contended that appellant, Waller, made any effort whatever to find out the financial condition of the corporation in which he held stock, the value of the stock, its dividend value, or other facts which would have enabled him to have determined for himself the sale value of his stock before he made the sale. Had he inquired of appellees, Hodge Brothers, the book or market value of the stock, the probability of dividends and the amount, the financial condition of the company or the plans of the company for the future it would have then become their duty as directors and officers of the corporation to have fully and fairly disclosed to him the truth in answer to each inquiry, if within their knowledge, but they were not bound to volunteer information concerning the company or stock or dividends, and their failure to do so did not render them guilty of bad faith or subject them to the payment of damages or the cancellation of the contract of purchase of stock. The trial court did not err, therefore, in holding that there was no fraud or misrepresentations on the part of appellee in the purchase of the stock of appellant.

Appellant also insists that after the case was prepared his motion for a trial of certain questions of fact by jury should have been sustained, and an issue out of chancery allowed. Appellant instituted the action properly in equity, for he sought a rescission of contract. Under section 12 of the Civil Code, in an equitable action, properly commenced as such, either party, may, by motion, have the case transferred to the ordinary docket for the trial of any issue concerning which he is entitled to a jury trial; but either party may require every equitable issue to be disposed of before such transfer. When the chancellor decided that there was no fraud there was no question of fact to submit to a jury, and the motion for an issue out of chancery could not be sustained.

We find no reason for disturbing the judgment of the chancellor and it is affirmed.