## Riddell et al. v. Kirby.

(Decided May 3, 1929.)

HUNTER M. SHUMATE for appellant.

F. J. STEVENS for appellee.

Opinion of the Court by Chief Justice McCandless—Reversing.

In an action for deceit, Joe Peck Kirby sought damages against John A. Wallace and James S. Riddell. The petition alleged that the defendants, acting together in pursuance of a conspiracy, fraudulently represented

to him that he was in danger of losing his distributable share of an estate recovered for the death of a deceased son then being administered by A. M. Clark, and that, relying on their representations, he was induced to sell and assign his distributable share in that estate to Wallace for the sum of $800, when in fact and in truth the amount then due him was $1,004, and was known to be so by Wallace. Appropriate pleadings made up the issues, and on a jury trial plaintiff recovered a judgment for the amount claimed. Wallace has entered motion for an appeal.

As near as we can determine from the meager evidence introduced, the son of plaintiff died as the result of an industrial accident. A. M. Clark as administrator recovered over $8,000 therefor, it not appearing whether any of this went to attorneys. Apparently the deceased son was unmarried, and under the statute, after the payment of funeral expenses, etc., the recovery vested in his father and mother. The mother died before distribution, and her share was inherited by her children. Some of these sold and assigned their claims to John Wallace at a sum very much below their value. One of these suggested to Wallace that he buy his father's claim. Wallace saw the administrator, who advised him that he had advanced various sums to Kirby and that there was then due him between $1,000 and $1,300, but there were claims pending against the estate, and that he would not advise him to pay over $900 or $1,000. Young Kirby advised Wallace that he (Kirby) could purchase the claim for $800, and offered to do this and sell it to him for $850. At this time only six months had elapsed from Clark's appointment as administrator, and Wallace says he advised Kirby if he would wait until the estate was settled he would get his money. He was not specially interested, but Kirby was anxious to sell, and he purchased the claim for $850, paying $800 to plaintiff and $50 to young Kirby, and received a written assignment of the claim, which is now shown to be $1,004. Plaintiff testifies:

That he is old and uneducated and can neither read nor write; that Wallace came to see him two or three times; and that J. S. Riddell, who is associated with Wallace in business, visited him a number of times and insisted on him making the sale; that his son, Thee, advised him to sell it, which he finally did. He continues:

"They just kept running after me and wanting to buy it. Asked me what I would take. Said he

would give $800. I told him I wanted to sell it, that. I did not know what I had over there or anything. Slick (J. S. Riddell) said they would beat me out of what I had, if I did not do something about it.

"Q. Said who would beat you out of it? A. Clark. Said I would never get anything out of him.

"Q. You finally did sell it to them did you? A. Yes, sir.

"Q. Now when they told you, Mr. Kirby, that unless you sold them your claim that you would lose what you had, did you rely on their statement as being true in that instance; did you think they were telling you the truth? A. Well, I didn't know whether they were going to beat me or not; that is. what they told me, that he would beat me out of it.

"Q. Did you think they were telling the truth and rely on what they said? A. I didn't know what they might do.

"Q. Did you believe what they said to you about it? A. No sir, I didn't much believe it.

"Q. And you went ahead and sold it? A. I went ahead and let them have it anyhow.

"Q. Did they try to tell you how much money you had over there? A. No, sir, they didn't tell me,. and I didn't know.

"Q. Had you ever tried to find out from Mr.. Clark? A. No, sir."

It is not claimed that any confidential relation existed between the parties, and it is questionable whether the facts stated constituted actual fraud upon the part of defendants; but if we assume there is a scintilla of evidence on this point, nevertheless plaintiff entirely fails. to show that he relied on the alleged inculpatory statements. It is well settled that in an action for deceit, as. well as for the cancellation of a written instrument on the ground of deceit, plaintiff's evidence must show that he relied on the alleged false representations and that they constituted a material inducement to enter into the contract assailed. Hoffman v. Friedman, 171 Ky. 317, 188 S. W. 408; Taylor v. Mullins, 151 Ky. 597, 152 S. W. 774; Bewley v. Moreman, 162 Ky. 32, 171 S. W. 996; Livermore v. Middlesboro Town-Lands Co., 106 Ky. 140, 50 S. W. 6; Cole v. Young, 167 Ky. 600, 181 S. W. 177.

In the absence of proof of these essential elements,. the court should have given a peremptory instruction for defendants.

The motion for an appeal is therefore sustained, and the case reversed for proceedings in conformity with this. opinion.