## Phelps et al. v. Home Owned Stores et al.

(Decided February 23, 1932.)

ROBERT HUBBARD and ROBERT E. WOODS for appellants.

WOODWARD, HAMILTON & HOBSON for appellees.

OPINION OF THE COURT BY JUDGE RICHARDSON—Affirming.

The appellants are a mother and two sons, Robert Phelps in May, 1930, was about 18 years of age. He had been working for the A. & P. Company in the city of

Louisville at $18 per week. The Home Owned Stores was a corporation engaged in business in the city of Louisville. C. M. Vaughn was its president. The Home Owned Stores owned a stock of merchandise and fixtures at 1001 Mary street in Louisville, Ky. Robert Phelps, Samuel Phelps, his brother, and Lena Phelps, their mother, and the Home Owned Stores, on the 1st of May, 1930, entered into a written contract whereby they agreed to purchase the stock of goods of the Home Owned Stores at 1001 Mary street, and agreed to pay therefor "the inventoried selling price, less 20% discount, and the fixtures at face value." After the contract was executed and delivered, an inventory of the stock of goods was taken when a discussion arose as to the price of the fixtures. A list of the fixtures was made out by Vaughn, including not only the fixtures but items of insurance and rent. After the written contract was signed by the parties Vaughn stated, so Samuel Phelps testifies, that the price of the fixtures was $590, and that was what he was going to sell them for. It was discovered during the time the inventory was being made that certain goods were damaged, when the president of the corporation agreed "to make good everything that was damaged."

Samuel Phelps, prior to entering into the written contract, worked in the fixture department of the Belknap Hardware & Manufacturing Company. Lena Phelps was engaged in housekeeping. After the inventory was completed, the appellants paid to the Home Owned Stores the sum of $275 in cash, and executed and delivered to it their note for $1,359.80, payable in ten monthly installments of $125 each, on the 5th day of each month thereafter, beginning June 5, 1930, excepting the two payments of $54 each. These two payments were to be paid on the 5th day of each month after the expiration of the first ten months; all bearing interest from date until paid. The appellants, through Robert Phelps, took possession of the stock of goods and fixtures, and began to engage in business, buying and selling groceries, and continued for sixteen weeks, during which time two of the monthly installments became due and were paid. Then the store was closed and abandoned by the Phelpses. After it was abandoned by them, the Home Owned Stores filed an action in the Jefferson circuit court against them to recover the unpaid notes. The appellants filed an answer in which they charged that the ap-

pellee, by its president, Vaughn, falsely represented 1 that the store was doing a $350 business the week; 2 that appellee agreed it would sell the Phelps groceries so they could compete with the A. & P. Chain store, two blocks away; 3 that it would take back certain unsalable merchandise, and it would let them have the fixtures at face value. Issues being completed by appropriate pleadings, on a trial by a jury, at the conclusion of the evidence of appellants, a peremptory instruction was given directing the jury to find for the appellee. The appellants appeal.

There is no disagreement between counsel of the appellants and the appellee as to the law of the case. Their disagreement arises in applying it to the facts. Without a detailed statement of the evidence, we are safe in saying that the appellants have failed entirely to establish the allegations relied upon as their defense to the note. No witness was asked, nor answered, relative to the amount of sales of the Home Owned Stores per week during the time the store was operated by the corporation. The appellants endeavored to establish the facts to sustain this issue by showing that the sales per week made by Robert Phelps were a great deal below $350. Evidence of the amount of his sales while he was operating the store could not possibly show the weekly sales of the store when operated by the appellee. It is needless to say that his sales depended too much on his salesmanship, personality, and experience, and therefore were too uncertain to establish by comparison the sales per week while appellant was in charge of the store. It is conceded that Robert Phelps possessed neither of these qualifications, and it would be but natural that his sales would be below those of a man with these qualifications. The court properly refused to permit this evidence to go to the jury.

The appellants claim that the appellee agreed with them to ''take back and give credit for all unsalable merchandise,'' also that the fixtures were not invoiced at face value. Even if the evidence as to these questions was undisputed, it is admitted by the appellants that the nature and quality of the unsalable merchandise and the price at which the appellee intended to charge and did charge for the fixtures, including the insurance and rents, were made known to them before the execution and delivery by them of the note to appellee. With knowledge

thereof, they paid $250 cash, took possession of the stock of goods after the execution and delivery of the note, and paid two installments before complaining against the invoice price of the goods, if not before the appellee's failure "to take back and give credit for the unsalable merchandise." This admission by the appellants shows that they did not rely on the alleged false representations of the appellee, and that they did not constitute a material inducement to them to carry out the contract and to execute and deliver the note to the appellee. Riddell v. Kirby, 229 Ky. 242, 16 S. W. (2d) 1057, and cases cited.

The reason for the rule is very evident. The appellants had an opportunity to refuse to carry out the contract, and not accept the stock of goods and fixtures, and not to execute and deliver the note to the appellee, but, disregarding their knowledge of the falsity of the alleged representations, and relying upon their own judgment, constitute a waiver of their right to rely upon the alleged false representations. Long v. Harbison & Gathright, 216 Ky. 112, 287 S. W. 354.

As regards the claim that the president of the corporation agreed to sell them groceries so they could compete with the A. & P. chain store two blocks away, if it amounts to a false representation, no evidence was offered or heard to show the refusal of the appellee to comply therewith. They introduced Vaughn, the president of the Home Owned Stores, and by his testimony it is shown that the appellee was ready, able, and willing to sell to them groceries at a satisfactory price, if they would pay cash therefor. It is not contended by appellants that they had the cash with which to pay, or that they did pay cash for the groceries added to the stock. It cannot be contended with reason that, even if such an agreement was made between the parties, the appellants would be entitled to damage for its breach, if they had not the cash with which to pay or offered satisfactory arrangement to pay the appellee. It likewise should be conceded that the appellee should not be expected to sell them goods, unless they paid, or made satisfactory arrangements to pay for them.

Finally, it is insisted that Vaughn falsely and fraudulently represented to Lena Phelps that she would not be liable on the note if she signed it. Even if such statement were made, there is no allegation or proof that her

signature to the note was procured by fraud. A note cannot be altered or changed nor its payment defeated by such parol evidence. No sufficient evidence was offered or heard to sustain the charge of fraud.

The appellants complain of the admission of certain evidence brought into the case by the line of questions propounded by the appellee to certain witnesses and of the act of the court in refusing to admit certain evidence to be heard by the jury and offered by them. Conceding that they are right in both contentions, even if the evidence had been heard by the jury as now insisted by the appellants, the question of the insufficiency of the evidence would remain. With the evidence in the case as it is argued by the appellants, it would still be insufficient to carry the case to the jury.

Wherefore the judgment is affirmed.