## Wright *vs* Swayne, &c.

### APPEAL FROM THE HICKMAN CIRCUIT.

*Vendor and vendee.   Rescission.   Damages.*

CHANCERY.

*Case* 99.

CHIEF JUSTICE EWING delivered the opinion of the Court.

*June* 12

On the 23d January, 1837, Joshua Swayne, Thomas
Crawford, John Ray, John L. Hagler, and John Jenkins,
formed themselves into a joint stock company, putting
into the company 370 acres of land already laid off into
lots in the old town of Columbus, and three hundred acres
of land adjoining below, on the Mississippi river, each
putting in separate interests in said lots and land.   The
whole was put in at $100,000; the 370 acres in town lots
at $30,000, and the 300 acres of land below at $70,000.
This stock was divided into 1,000 shares, and certificates
were issued by them as the Columbus Stock Company,
of 100 dollars each share, signed by the proprietors and
divided among them according to the interest put in by
each, which certified that the holder of the certificate was
entitled to one share of a thousand shares, interest in the
lots and land described as having been put in, "to be
laid off into a new town, before the first Monday of Oc-
tober, 1837, when the sale of said property shall com-
mence, and continue from day to day until all is disposed
of, each of the undersigned proprietors of said property,
will be bound to the purchaser or purchasers, for that part
of the title of said property which is invested in him, to be
conveyed by a trustee to be appointed by the proprietors."
The town was laid off and its prospects and advantages
proclaimed far and near, and a large number of the cer-
tificates of stock sold.   Two unsuccessful attempts were
made to sell the lots, the first on the day fixed in the cer-
tificate of stock, and the second in the spring following.
Wright afterwards purchased from second hand, some

The case stated.

WRIGHT
vs
SWAYNE, &c.

seventy two shares of the certificates of stock, as he charges, and which is not denied by Swayne, but there is but one certificate exhibited in this record, which is, perhaps, exhibited as a specimen. Swayne had purchased from one Todd, and procured to be assigned to him, several large notes upon Wright, and Wright being the holder of the aforesaid certificates, filed his bill against Swayne, a resident, and the other four proprietors, who were non-residents, injoining the collection of the notes held by Swayne, and praying a set off, charging fraud upon the company, a want of title, and an inability to convey, as to a large parcel of the property, and embarrassment on the part of Swayne, the resident proprietor, and an intention to sell out his means in this State and remove. Other matters were, by amended bills and cross bills, brought in issue, which are not necessary to mention, except that Swayne, by cross bill, set up a mortgage upon a tract of land owned by Wright, to secure the payment of the notes assigned to him by Todd, and prayed a foreclosure and sale. Wright's injunction was dissolved by the Circuit Court with damages, and his bill dismissed absolutely as to Swayne, and without prejudice as to the company, and a decree for foreclosure and sale of the mortgaged property on Swayne's cross bill, without giving day of payment, and Wright has appealed to this Court.

The injunction of Wright was properly dissolved by the Circuit Court. The demands have no connection with each other, and the equitable grounds set up in the bill, of insolvency on the part of Swayne, and an intention to sell out his effects and remove from the State, are denied in his answer, and are entirely unsustained by the proof. Without some obstruction to the enforcement of the complainant's decree against Swayne and the land company, such as insolvency, non-residency or an intention to sell or remove, on the part of Swayne, against whose demand the set off is sought, the demands being disconnected, no equitable grounds for arresting Swayne's judgment at law is shown.

But under the general allegation and prayers of Wright's bill, he is certainly entitled to some relief, and his bill should not have been dismissed. The jurisdiction is more

Set off in equity refused, insolvency and fraudulent intent of defendant to sell off his property not sustained by proof.

appropriate to a Court of Chancery than to a Court of Law, and the more especially as a part of the land company are non-residents of the State; and in case of a specific enforcement of the contract or dissolution, as the land and town lots lie in this State, they may be acted upon, either in decreeing a division or sale, or in case of dissolution of the contract, in enforcing the lien for the re-payment of the consideration, or value of the land and lots.

The shareholders or holders of the certificates are certainly the beneficiaries, and are entitled either to the proceeds of the sales of the lots fairly made, or to the lots themselves. And as the amount of the proceeds or value of the lots must depend, as well upon the validity of title as upon the faithful execution of the trust assumed by the proprietors, upon the failure of title as to a material part of the land embraced in the intended town, gross negligence, wilful default, or fraud in carrying out the proposed scheme, would entitle the shareholders or purchasers and holders of the certificates, either to an enforcement of the trust or to a conveyance of the unsold lots, for which there is a good title, and the payment of the proceeds of the lots fairly sold, to each shareholder rateably, according to the number of the shares held, and to a compensation for that to which the title has failed, as well as for lots sold fraudulently, or to a dissolution of the whole contract, at the election of each share holder, and a rateable compensation in damages, from the proprietors.

Though any individual who has been deceived, deluded, or defrauded in the purchase of the certificates of stock from the proprietors, or any individual among them, or from any other, may certainly ask a rescission of his contract and a restitution of the amount paid, yet a general delusion or fraud upon the public, or an intended delusion, deceit, or fraud, cannot entitle any individual who has not been cheated, deluded, or deceived, to redress. Nor can any one who acquires the certificate by sub-purchase, rely upon or set up the fraud practised upon his vendor, if he himself has not been deceived or defrauded. Wright seems to have acquired the certificate which he holds, by sub-purchase, after the speculation had failed, and with a full knowledge of all the facts in relation to

WRIGHT
vs
SWAYNE, &c.

Chancery has jurisdiction where the object of the bill is a specific execution or a rescission, and an enforcement of lien for money paid by the purchaser.

A joint stock company was formed to lay out and sell off a town, certificates of stock issued and signed by the company. A sub-purchaser of certificates of stock cannot, on the ground that his vendor was deceived, demand a rescission of his contract of purchase after the speculation had failed, & a knowledge thereof,

WRIGHT
*vs*
SWAYNE, &c.

nor can a member of the company set aside the contract of association on the ground that he was deceived after they have parted with their stock.

A joint stock company formed to lay off, and sell out a town, announcing that titles would be made to purchasers, are jointly and individually bound for such titles; and a certificate holder has a right, (in case the title is defective, to a material part of the land; promised to be made part of the stock,) to a proportionate compensation for such loss.

the sales that had been made, the condition and value of the lots, and of the certificates. And though the individuals from whom he acquired them, may have been cheated and imposed on by the person or persons who sold to them, Wright has no right to complain of the imposition.

The sale and delivery of the certificates to Wright is an abandonment of the fraud, which they might set up in a Court of Chancery, against the individual or individuals from whom they may have purchased, as by parting with the certificate they have put it out of their power to return them, on a disaffirmance and dissolution of their contract.

But by the certificates put out, over the signatures of the five proprietors, announcing to the world "that the holder of each certificate will be entitled to one share out of one thousand shares, being that interest in the following property, sixty three lots and four half lots in the town of Columbus, containing by estimation, three hundred and seventy acres, also, a tract of land containing, by estimation, three hundred acres, immediately below and adjoining the said town, on the Mississippi river, to be laid off into a new town, before the first Monday in October, 1837, when the sale of the said property shall commence, and continue from day to day, till all is disposed of;" and the obligation which they take upon themselves, to make titles to the purchasers, certainly imports that they have *title* to the whole of the land and lots promised to be laid off into a town, and that they are prepared to make titles to the *whole* of the premises to the purchasers, connected together in the form of lots, streets, and alleys, in a grand town. Each of the purchasers and holders of the certificates, had a right, on the annunciation made on the face of the certificate, to look to the whole of the proprietors jointly and severally, for a good title to the whole of the property put in and promised to be laid off into a town. And though each proprietor was to be bound to the purchasers of lots for that part of the title which is invested in him, they all, by fair implication from their certificate, jointly signed by all, announced to the public and to each purchaser of a certificate, that there was good title in all, or in some one or

other of them, to the whole property put in. If, therefore, a material part of the property put in has been lost and cannot be laid off into a town as promised, the certificate holders, as other vendees, have a right to complain, and to ask a dissolution of the contract, and a restitution to each, of the amount paid, or of the value of their rateable loss and injury, in damages.

About one half of the 300 acres, which was put in at $70,000, has been lost, and the title has failed upon a proceeding which commenced before the scheme was devised, or the land put in as stock in the following manner: A creditor of John Swayne, the brother of Jos. Swayne, one of the proprietors and projectors of the grand scheme, had filed a bill in Chancery, alledging that John Swayne was the real owner of the town lots in the old town of Columbus, and of the one half of the land put in below the town, and that he had fraudulently conveyed the same, or procured it to be conveyed to his brother, Joseph Swayne, to hinder and delay his creditors. Though this suit had been dismissed, upon a hearing in the Circuit Court, it had been brought to this Court, and was depending when the town project was formed, and the certificate of stock put into circulation. The decree of the Circuit Court was afterwards reversed by this Court, and the town lots and about one half of the 300 acres of land directed to be sold in satisfaction of the creditor's demand. The lots and land were sold, but Joseph Swayne, who had sold the lots to Ray, another proprietor of the stock company, and which had been put in by him at $30,000, having purchased them, the title to that portion of the new town, has probably been secured. But the land directed to be sold, was purchased by a stranger, and the title to that portion is gone forever, and can never be laid off into lots and sold for the benefit of the holders of the certificates. The failure of title, to so large a parcel of land promised to be put in, and the effect that such failure must have upon the entire project, forms sufficient ground to entitle Wright and each shareholder,'to a rescission of the contract. But the question is presented, what shall be the criterion of damages which each may recover from the proprietors ? In the

A portion of the land laid off and sold as a town or put into the stock of the company is lost—by what criterion is the damages on behalf of scrip holders of the company to be settled ? Held that he was entitled to his proportion of the value of the part lost, taken in comparison with the value of the whole property or stock, on the day the scheme failed, either as town lots or land at his discretion, with intent to be ascertained by an auditor.

WRIGHT.
vs
SWAYNE, &c.

case of executory contracts between vendor and vendee, by the failure to convey, the vendee has been deprived of the land, and the benefit of the purchase. What loss has he sustained by it? The value of the land, of which he has been deprived. It is true that the best criterion of that value, is the consideration agreed to be given. But why is that the best test of its value? Because this is the estimated and agreed value fixed upon the land by the mutual and concurring opinions of both parties. But when the consideration has not been fixed and agreed on by the parties, or cannot be ascertained, then the value of the land at the time of the sale, to be ascertained by witnesses, is the criterion.

The specification of 1,000 shares of 100 dollars each, on the face of the certificate, is no evidence that that was the consideration given in the purchase of an interest in the company, nor is it any evidence of the intrinsic value of the land and lots put in, nor is it evidence of an agreed price fixed upon a share in the property, as upon a contract between vendor and vendee; but amounts to no more than an inflated estimate and opinion of the present or future prospects and value of the grand scheme in contemplation, and which they were at full liberty to estimate as they pleased; every purchaser being left at full liberty to exercise his own judgment, and place his own estimate upon the shares. No purchaser was bound to take the estimate or opinions of the proprietors and owners of the property, as to its value, no more than a purchaser would be bound to take the estimate or opinion of the vendor of a horse worth only $100, which his owner estimates at $1,000.

We take it therefore, in the case before us, there being no individual fraud or overreaching practised upon Wright, the complainant, that the criterion of damages which he has a right to recover, upon a dissolution of the contract, is his rateable portion, according to the number of shares held by him, of the value of the lots and land put in, to be estimated as town lots or as land, whichever shall be most favorable to him, on the day that the scheme was broken up, or embarrasments thrown in the way of its consummation, by the sale of a portion of the land un-

der the decree of the Court, and consequent loss of the same, with interest thereon up to the decree.

And we would here suggest the propriety, as the better way of arriving at truth, upon the return of the cause, of appointing an auditor, or disinterested and intelligent Commissioners or auditors, with power to hear evidence and make out an estimate of the value, in case Wright elects to rescind, or all necessary estimates in case he elects to go for a rateable share of the proceeds of the lots sold, and the lots which have not been sold, and the value of the land lost; and that he or they if more than one be appointed, take testimony and examine each of the parties on oath, if the opposite party desire it, and make a report of the result of their proceedings, and an estimate of the true amount which Wright may be entitled to recover. As the proprietors are all jointly liable, it is proper to revive the suit against Crawford's heirs and personal representatives; and the Circuit Court erred in refusing permission to revive.

It is not necessary to bring all the shareholders before the Court. Each is entitled to recover a rateable amount according to the shares he holds—that is, each share entitles the holder to the one thousandth part. And though it might be best to wind up this whole transaction at once, as the shareholders are numerous, widely dispersed and unknown, and if brought before the Court, some might desire to dissolve, others to affirm in part and dissolve in part, and each has a separate and distinct interest, and may have derived their certificates from different sources, and upon different contracts, and may be entitled to different measures of equity springing out of the special contract of each, it would be impracticable, and not even advisable to bring all the shareholders before the Court.

The Circuit Court has also erred, in not giving day of payment to Wright, before foreclosing his mortgage, and ordering a sale of the mortgaged premises, on the cross bill of Swayne.

The decree of the Circuit Court is reversed, and cause remanded for further proceedings, not inconsistent with this opinion.

*Cates & Lindsey and Morehead & Reed* for appellant: *Goodloe* for appellees.