## Reinhardt v. Owensboro Planing Mill Co.

(Decided November 7, 1919.)

### Appeal from Daviess Circuit Court.

1.  Corporations—Conduct of Director.—A director of a corporation dealing with the company on his own account must be careful not to be guilty of any unfair or dishonest conduct in such transactions.

2.  Corporations—Conduct of Director.—Directors of corporations are bound to exercise nothing short of the uberrima fides of the civil law. They must not allow their official conduct to be swayed by their private interest or welfare, unless that interest be one they have in common with other stockholders, nor must they profit at the expense of the others.

3.  Corporations—Conduct of Directors.—Private interests of directors must yield to their official duty whenever these interests conflict.

E. B. ANDERSON and W. FOSTER HAYES for appellant.

CLEMENTS & CLEMENTS and AUD & HIGDON for appellee.

OPINION OF THE COURT BY JUDGE QUIN—Reversing in part and affirming in part,

This suit is the outgrowth of a contract entered into between the parties to this appeal in October, 1913. Appellant is a stockholder and director in the appellee, a corporation dealing in building material and engaged also in the business of a building contractor. By the terms of the contract appellee was to construct a dwelling house for appellant at the price of $7,614.63. The negotiations on appellee's part were conducted by its manager, who had power to make contracts. The contract was signed by appellee's president.

In making an estimate of the cost of the building, bids were secured from various sub-contractors on all the work except that to be furnished by appellee, and which latter amounted to approximately $2,000.00. Bids for the concrete, stucco and tile work were received from two sources, that of A. R. Jacks was $2,568.75, which was several hundred dollars less than the other bid. In figuring the cost of the entire work, the sub-bids were taken as submitted, a profit was added to the material and work to be furnished by appellee, but not as much as on other contracts, which was from twenty-five to thirty-three and one-third per cent, $100.00 being added for incidentals.

The original estimate included the higher of the two bids on the concrete and stucco work, because this was considered the better; it was with "safer people"; Jacks was insolvent and had made very close figures on the work; besides Jacks was liable to cause trouble in permitting liens to be filed against the property. Appellant complained of the estimate, and in an endeavor to secure a lower price, the two bids on the concrete work were discussed, and at appellant's suggestion Jacks' bid was accepted. It was thought that trouble with Jacks could be avoided by keeping a proper check on him. The expected happened; a lien was filed by the cement contractor. Jacks did not complete his work and it had to be finished at an extra cost or loss to appellee of $618.80, this amount being in addition to the lien for cement amounting to $146.50.

The bid for the painting amounted to $272.00; after working two or three days the painter quit and his part of the work had to be done by others at a loss of $340.50 above the amount of the bid included in the estimate.

The cause was referred to a master, and in a lengthy report on the facts and his conclusions thereon, the master found against appellee on the two items of $618.80 and $340.50; also charged it with the sum of $146.50 plus interest of $9.52 paid to satisfy the lien filed on the cement account, but gave credit for certain items of extras amounting to $269.46. These are the four items involved on this appeal, as well as certain claims set up in a counterclaim filed by appellant (defendant) and an additional sum of $1,087.89, which appellee seeks by cross-appeal.

Various exceptions were filed to the master's report by both parties and upon final submission appellee was awarded judgment in the sum of $10,017.55, made up as follows: Contract price $7,614.63; loss on Jacks' bid $618.80; loss on painting $340.50; extras $1,174.16 (not disputed) and $269.40, subject to admitted credits of $5,681.94.

The wisdom of appellee's former manager, introduced as a witness for appellant, in rejecting Jacks' bid is shown by the subsequent events; he had good reasons for including the safer though higher bid. That he was influenced by appellant to make the change is evident from his testimony. In a letter written appellee in 1915, he says:

"Your letter of the 24th inst. is at hand. I note what you have to say relative to the John Reinhardt contract, which is nothing more than I have been expecting to hear."

After reciting his conversation with appellant about these bids, he continues:

"I then told Mr. Reinhardt that he was one of the board of directors of the planing mill and if he thought that safe for the mill we would do it." . . .

It was his manifest aim to do what he could to favor this director; nothing was added to the sub-bids and but a small profit was figured on the mill work and material, somewhere between $150.00 and $250,00, according to his recollection. Very properly, therefore, did he reject Jacks' bid. It was necessary that he avoid all possible expense or trouble; his margin of profit was too small to take any chances and he agreed to Jacks' bid to please or satisfy appellant. It was only because Mr. Reinhardt thought it safe and desired it, that the manager consented to accept his bid.

The major portion of the present day business of this country is conducted by corporations because of their peculiar attributes and of the advantages and protection found in corporate existence. It is not only natural, but right, that a person interested in such an organization should favor it with any and all business possible. However, he must be careful that he is not guilty of any unfair or dishonest acts in his dealings or transactions with the company.

The relations of officers and directors in this respect are more closely scrutinized than those of mere stockholders, as the former are charged with the management and conduct of the corporation's business. Directors are bound to exercise nothing short of the *uberrima fides* of the civil law. They must not in any degree allow their official conduct to be swayed by their private interest or welfare, unless that interest be one they have in the good of the company in common with all the stockholders. They must not profit at the expense of the others. This duty results from the nature of their employment or position and without any stipulation to that effect. Their private interest must yield to their official duty whenever those interests are conflicting. One cannot faithfully or fairly serve two masters or interests with diverse or conflicting claims. The trust imposed upon a director as such must not be exercised for his own private exclusive benefit, nor for the benefit of third persons. See 10 Cyc. 787.

Speaking of the trusteeship of directors, Thompson on Corporations, sec. 1220, says:

"Directors in dealing with the corporation must not only give to the corporation the benefit of their best care and judgment, but they must exercise the highest and most scrupulous good faith, and self-interest must be sacrificed for the corporate good. Anything less than this is disloyalty to the coporation. The rule on this subject is stated by Mr. Morawetz, and approved by some courts, as follows: 'The directors or trustees of a corporation, in accepting their appointment to office, impliedly undertake to give the company the benefit of their best care and judgment, and to use powers conferred upon them solely in the interest of the corporation. They have no right under any circumstances to use their official position for their own benefit or the benefit of any one except the corporation itself.' . . .

Directors are said to be the primary agents of the corporation, and, as such, there is required of them the highest and most scrupulous good faith in their transactions for the corporation.''

Applying this rule, one of universal recognition, we are of the opinion that the loss on the concrete and stucco work was due to the interference and activity of appellant; but for his efforts and influence this loss would doubtless not have occurred and we do not think his fellow shareholders should be compelled to shoulder the loss.

The lien filed by the cement contractor is controlled by the same rule and was but an additional loss occasioned by the action of the appellant in insisting upon the substitution of Jacks' bid for the better one, and the lower court did not err in disallowing this claim.

The item of $269.46 for extras was allowed by the master and sustained by the court. It is made up of fourteen items, ranging in price from $.05 to $77.00, an examination of each of which convinces us they were properly allowed.

The bid for painting was $272.00. It is urged that the original bidder quit because he could not please appellant's wife; a second man suffered the same fate. There is testimony that it was then agreed that Mrs. Reinhardt could have the painting done in her own way, the bills to be paid by appellee and charged to appellant, credit being given for the amount of the original bid. Mr. Reinhardt denies any such an agreement. Sufficient reason for the abandonment of this contract is not shown —the painters whose bid was accepted are solvent— satisfactory explanation as to the necessity of the excess cost of this item is not furnished by the record, hence we think the court erred in not rejecting this amount.

The principal item in appellant's counterclaim, and the only one referred to in the brief, is that growing out of the alleged defective plastering, $700.00. The bid for plastering was only $456.10, but there is testimony that the work is above the average. We do not think it error to have disallowed this claim.

Appellee's cross-appeal is based upon its exceptions to the master's report which were overruled by the court. These consist of various items of extras not sufficiently supported by proof. Appellee has shown no reason for

disturbing the conclusions of the lower court as to these items.

Wherefore, the judgment of the lower court is reversed as to the allowance of the item of $340.50 only; in all other respects the judgment is affirmed on the original and cross appeals.