**ZAHN v. TRANSAMERICA CORPO-
RATION.**

**No. 9056.**

Circuit Court of Appeals, Third Circuit.

Argued March 7, 1946.

Reargued Jan. 21, 1947.

Decided June 30, 1947.

Samuel Handloff, of Wilmington, Del. (Samuel J. Levinson, and Frank Weinstein, both of New York City, on the brief) for appellant.

Edwin D. Steel, Jr., of Wilmington, Del., (Morris, Steel, Nichols & Arsht, of Wilmington, Del., on the brief), for appellee.

Daniel O. Hastings, of Wilmington, Del., amicus curiae.

Before BIGGS, MARIS, GOODRICH, McLAUGHLIN, O'CONNELL, and KALODNER, Circuit Judges.

BIGGS, Circuit Judge.

Zahn, a holder of Class A common stock of Axton-Fisher Tobacco Company, a corporation of Kentucky, sued Transamerica Corporation, a Delaware company, on his own behalf and on behalf of all stockholders similarly situated, in the District Court of the United States for the District of Delaware. His complaint as amended asserts that Transamerica caused Axton-Fisher to redeem its Class A stock at $80.80 per share on July 1, 1943, instead of permitting the Class A stockholders to participate in the assets on the liquidation of their company in June, 1944. He alleges in brief that if the Class A stockholders had been allowed to participate in the assets on liquidation of Axton-Fisher and had received their respective shares of the assets, he and the other Class A stockholders would have received $240 per share instead of $80.80. Zahn takes the position that he has two separate causes of action, one based on the Class A shares which were not turned back to the company for redemption; another based on the shares which were redeemed.[1] He prayed the court below to direct Transamerica to pay over to the shareholders who had not surrendered their stock the liquidation value and to pay over to those shareholders who had surrendered their stock the liquidation value less $80.80. Transamerica filed a motion to dismiss. The court below granted the motion holding that Zahn had failed to state a cause of action. See 63 F.Supp. 243. He appealed.

The facts follow as appear from the pleadings, which recite provisions of Axton-Fisher's charter. Prior to April 30, 1943, Axton-Fisher had authorized and outstanding three classes of stock, designated respectively as preferred stock, Class A stock and Class B stock. Each share of preferred stock had a par value of $100 and was entitled to cumulative dividends at the rate of $6 per annum and possessed a liquidation value of $105 plus accrued dividends. The Class A stock, specifically described in the charter as a "common" stock, was entitled to an annual cumulative dividend of $3.20 per share. The Class B stock was next entitled to receive an annual dividend of $1.60 per share. If further funds were made available by action of the board of directors by way of dividends, the Class A stock and the Class B stock were entitled to share equally therein. Upon liquidation of the company and the payment of the sums required by the preferred stock, the Class A stock was entitled to share with the Class B stock in the distribution of the remaining assets, but the Class A stock was entitled to receive twice as much per share as the Class B stock.[2]

---

[1] The plaintiff was originally the holder of 235 shares of Class A stock purchased on four occasions between July 23 and August 10, 1943, inclusive. Between August 2 and August 20, 1943, the plaintiff surrendered for redemption 215 shares and retained 20 shares.

[2] The charter provides as follows: "In the event of the dissolution, liquidation, merger or consolidation of the corporation, or sale of substantially all its assets, whether voluntary or involuntary, there shall be paid to the holders of the preferred stock then outstanding $105

Each share of Class A stock was convertible at the option of the shareholder into one share of Class B stock. All or any of the shares of Class A stock were callable by the corporation at any quarterly dividend date upon sixty days' notice to the shareholders, at $60 per share with accrued dividends.[3] The voting rights were vested in the Class B stock but if there were four successive defaults in the payment of quarterly dividends, the class or classes of stock as to which such defaults occurred gained voting rights equal share for share with the Class B stock. By reason of this provision the Class A stock had possessed equal voting rights with the Class B stock since on or about January 1, 1937.

On or about May 16, 1941, Transamerica purchased 80,160 shares of Axton-Fisher's Class B common stock. This was about 71.5% of the outstanding Class B stock and about 46.7% of the total voting stocks of Axton-Fisher. By August 15, 1942, Transamerica owned 5,332 shares of Class A stock and 82,610 shares of Class B stock. By March 31, 1943, the amount of Class A stock of Axton-Fisher owned by Transamerica had grown to 30,168 shares or about 66⅔% of the total amount of this stock outstanding, and the amount of Class B stock owned by Transamerica had increased to 90,768 shares or about 80% of the total outstanding. Additional shares of Class B stock were acquired by Transamerica after April 30, 1943, and Transamerica converted the Class A stock owned by it into Class B stock so that on or about the end of May, 1944 Transamerica owned virtually all of the outstanding Class B stock of Axton-Fisher. Since May 16, 1941, Transamerica had control of and had dominated the management, directorate, financial policies, business and affairs of Axton-Fisher. Since the date last stated Transamerica had elected a majority of the board of directors of Axton-Fisher. These individuals are in large part officers or agents of Transamerica.

In the fall of 1942 and in the spring of 1943 Axton-Fisher possessed as its principal asset leaf tobacco which had cost it about $6,361,981. This asset was carried on Axton-Fisher's books in that amount. The value of leaf tobacco had risen sharply and, to quote the words of the complaint, "unbeknown to the public holders of * * * Class A common stock of Axton-Fisher, but known to Transamerica, the market value of * * * [the] tobacco had, in March and April of 1943, attained the huge sum of about $20,000,000."

The complaint then alleges the gist of the plaintiff's grievance, viz., that Transamerica, knowing of the great value of the tobacco which Axton-Fisher possessed, conceived a plan to appropriate the value of the tobacco to itself by redeeming the Class A stock at the price of $60 a share plus accrued dividends, the redemption being made to appear as if "incident to the continuance of the business of Axton-Fisher as a going concern," and thereafter, the

per share, together with all unpaid accrued dividends thereon, before any sum shall be paid to or any assets distributed among the holders of the Class A common stock and/or the holders of the Class B common stock. After such payment to the holders of the preferred stock, and all unpaid accrued dividends on the Class A common stock shall have been paid, then all remaining assets and funds of the corporation shall be divided among and paid to the holders of the Class A common stock and to the holders of the Class B common stock in the ratio of 2 to 1; that is to say, there shall be paid upon each share of Class A common stock twice the amount paid upon each share of Class B common stock, in any such event."

[3] The charter provides as follows:

"The whole or any part of the Class A common stock of the corporation, at the option of the Board of Directors, may be redeemed on any quarterly dividend payment date by paying therefor in cash Sixty dollars ($60.00) per share and all unpaid and accrued dividends thereon at the date fixed for such redemption, upon sending by mail to the registered holders of the Class A common stock at least sixty (60) days' notice of the exercise of such option. If at any time the Board of Directors shall determine to redeem less than the whole amount of Class A common stock then outstanding, the particular stock to be so redeemed shall be determined in such manner as the Board of Directors shall prescribe; provided, however, that no holder of Class A common stock shall be preferred over any other holder of such stock."

redemption of the Class A stock being completed, to liquidate Axton-Fisher; that this would result, after the disbursal of the sum required to be paid to the preferred stock, in Transamerica gaining for itself most of the value of the warehouse tobacco. The complaint further alleges that in pursuit of this plan Transamerica, by a resolution of the Board of Directors of Axton-Fisher on April 30, 1943, called the Class A stock at $60 and, selling a large part of the tobacco to Phillip-Morris Company, Ltd., Inc., together with substantially all of the other assets of Axton-Fisher, thereafter liquidated Axton-Fisher, paid off the preferred stock and pocketed the balance of the proceeds of the sale. Warehouse receipts representing the remainder of the tobacco were distributed to the Class B stockholders.

Assuming as we must that the allegations of the complaint are true, it will be observed that agents or representatives of Transamerica constituted Axton-Fisher's board of directors at the times of the happening of the events complained of, and that Transamerica was Axton-Fisher's principal and controlling stockholder at such times. It will be observed also that jurisdiction in the suit at bar is based upon diversity of citizenship and jurisdictional amount. In such a suit the conflict-of-laws rule of Delaware requires the District Court of Delaware to refer to the law of the State of incorporation to determine the extent and nature of relationships between corporation and stockholder, corporate officer or director and stockholder and between stockholders *inter sese*. See Skillman v. Conner, 8 W.W.Harr. 402, 193 A. 563, and Black & Yates v. Mahogany Ass'n, 3 Cir., 129 F.2d 227, 233, 148 A.L.R. 841. As was well stated by the court below in Geller v. Transamerica Corporation, D. C., 53 F.Supp. 625, 629, 630, "* * * under the Delaware conflict of laws rule, the law of the place of the wrong determines the quantum of the breach of duty. * * * It would seem that the place of wrong is where the final act occurred which establishes liability." This court approved that reasoning by affirming per curiam the decision. See, 3 Cir., 151 F.2d 534.

The *loci* of the events complained of in the instant case are not set forth in the complaint. In Black & Yates v. Mahogany Ass'n, 129 F.2d at page 233, we stated, "We think that in the absence of allegations as to the place or places where the acts complained of occurred, the court below would have been entitled to assume that these operative facts took place within the State of Delaware," viz., the state of the forum. It is necessary therefore to assume that the events complained of took place within the State of Delaware. The law of Kentucky determines the existence of fiduciary duty, or the lack of it, between Transamerica (as the board of directors of Axton-Fisher, as its officership or as its controlling stockholder) and Axton-Fisher's minority Class A stockholders, and the law of Delaware determines the extent of the breach of fiduciary duty, if any.

Transamerica leans heavily upon the decision of the Court of Appeals of Kentucky in Taylor v. Axton-Fisher Tobacco Co., 295 Ky. 226, 173 S.W.2d 377, 148 A.L. R. 834, and to a lesser extent upon the decision of the court below in the Geller case. The latter authority held that a majority stockholder of a corporation is at liberty to deal at arm's length with a minority stockholder who sought to sell and did sell his stock to the majority stockholder in the absence of affirmative misrepresentation or fraud by the latter. This was a correct application of the law of Kentucky.[4] See Waller v. Hodge, 214 Ky. 705, 283 S.W. 1047, and Barth v. Fidelity & Columbia Trust Company, 188 Ky. 788, 224 S. W. 351. These decisions and that of the Geller case are not apposite under the circumstances of the instant case.

[4] The rule of law stated is analogous to that applicable when a director buys the stock of a stockholder. On this subject Thompson on Corporations, 3rd Ed., Section 1363, pp. 885 et seq., states: "On the proposition of the right or power of a director to deal with a stockholder in the purchase of his stock on an equal footing, the cases are diametrically opposed." But see Fletcher Cyc. Corporations, Section 1168. The view of the Delaware courts is the same as that of the Kentucky courts. See Cahall v. Lofland, 12 Del.Ch. 299, 114 A. 224, affirmed 13 Del.Ch. 384, 118 A. 1.

The decision of the Court of Appeals of Kentucky in the Taylor case requires careful analysis. The following appears. Charlotte Taylor, a citizen of Jefferson County, Kentucky, sued Axton-Fisher in the Jefferson Circuit Court, Chancery Branch, First Division, stating that she was the holder of nine shares of its Class B stock and, setting up in her complaint the provisions of Axton-Fisher's charter hereinbefore referred to, alleged that Axton-Fisher's board of directors by a resolution of June 16, 1943 had provided that the Class A stock not presented for redemption on or before July 1, 1943, should "continue in full force and effect with all the rights and privileges thereunto appertaining, as fully as if the call for redemption [pursuant to the resolution of April 30, 1943] had never been issued * * *" and that those Class A stockholders who had surrendered their stock for redemption might change their positions and remain as Class A stockholders of their corporation provided recissions of surrenders of their stock were filed with the corporation's agent on or before July 1, 1943. Taylor alleged, in short, that by the resolution of June 16, 1943 the board of directors attempted to change the call for the redemption of the Class A stock from a mandatory to an optional one, leaving it to the choice of the stockholders whether they would surrender their stock or not. Taylor asked the court to declare that the resolution of the board of April 30, 1943 was a final and irrevocable act of the board of directors, binding upon Axton-Fisher and on all Class A stockholders; that the attempted modification of the terms of the resolution of April 30, 1943 by the resolution of June 16, 1943 was void and that Axton-Fisher was required to carry out the redemption of the Class A stock as provided by the resolution of April 30, 1943.

A demurrer was filed and the cause proceeded to judgment. The Circuit Court of Jefferson County held that the board of directors had the right to modify the call embodied in the resolution of April 30 by the resolution of June 16. A brief opinion was filed. The case was appealed to the Court of Appeals of Kentucky. See 295 Ky. 226, 173 S.W.2d 377, 379, 148 A.L.R. 834. That Court, speaking through Commissioner Stanley, one Judge dissenting, stated inter alia: "The rights of the holders of Class A stock and of the corporation as to its redemption rested on an express contract, namely, the provision of the articles of incorporation which made them junior preferred stockholders *and subject at all times to have their stock retired,*" citing Thompson on Corporations, Sections 189, 210; 13 Am.Jur., Corporations, Section 318; Fletcher, Section 5443; Westerfield-Bonte Co. v. Burnett, 176 Ky. 188, 195 S.W. 477; F. T. Gunther Grocery Co. v. Hazel, 179 Ky. 775, 201 S.W. 336, and other authorities. Commissioner Stanley went on to say: "Manifestly, it was very much to the interest of the holders of Class B stock to have all these priorities, obligations and restrictions on and conditional joint control of the management eliminated. A substantial advantage was given to and acquired by the Class B stockholders by the resolution definitely and unqualifiedly calling Class A stock for redemption. That being true, it was vested and fixed, so that the directors could not withdraw or cancel or modify their action to the prejudice or detriment of Class B stockholders.

"The first action of the directors may not be regarded as but an offer or proffer, or in the nature of such, capable of being withdrawn before acceptance or consummation. Rather it is the converse. The charter provision constituted a continuing contractual power and corresponding right which only waited action by the directors for use and consummation. It was a continuing option." Commissioner Stanley said that while the acts of boards of directors, exercised in good faith and not in fraud of the rights of the stockholders, should not be interfered with by the courts,[5] if the prior action of the board of directors had vested rights in others the board could "not [subsequently] alter or affect those rights * * *". Discussing Axton-Fisher's charter provisions at some length, Commissioner Stanley stated, "* * * we [cannot] agree with the appellee [Axton-

---
[5] Citing KRS 271.230.

**42**

Fisher] that the result of this action of the directors is to be regarded only as an incidental benefit flowing to the Class B stockholders since they were not promisees of the [redemption] contract nor parties to whom performance was to be rendered. * * * The provision of the articles of incorporation and the effect of the action of the directors are too substantial and too great to be so regarded. *We think the provision for redemption of Class A stock was made as much for the one as for the other class. If it was not, then it was very delusive.*

"The principle applicable in cases where there has been a declaration of dividends is applicable here. Undivided profits of a corporation in a sense or qualifiedly belong to the stockholders, *but disposition or distribution thereof rests within the fair discretion of the directors.*",[6] citing Smith v. Southern Foundry Co., 166 Ky. 208, 179 S.W. 205.[7]

■ The circumstances of the case at bar are *sui generis* and we can find no Kentucky decision squarely in point. In our opinion, however, the law of Kentucky imposes upon the directors of a corporation or upon those who are in charge of its affairs by virtue of majority stock ownership or otherwise the same fiduciary relationship in respect to the corporation and to its stockholders as is imposed generally by the laws of Kentucky's sister States or which was imposed by federal law prior to Erie R. Co. v. Tompkins, 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188, 114 A.L.R. 1487.

■ The tenor of the federal decisions in respect to the general fiduciary duty of those in control of a corporation is unmistakable. The Supreme Court in Southern Pacific Co. v. Bogert, 250 U.S. 483, 487, 488, 39 S.Ct. 533, 535, 63 L.Ed. 1099, said: "The rule of corporation law and of equity invoked is well settled and has been often applied. The majority has the right to control; but when it does so, it occupies a fiduciary relation toward the minority, as much so as the corporation itself or its officers and directors." In Pepper v. Litton, 308 U.S. 295, 306, 60 S.Ct. 238, 245, 84 L.Ed. 281, the Supreme Court stated: "A director is a fiduciary. * * * So is a dominant or controlling stockholder or group of stockholders. * * * Their powers are powers in trust. * * * Their dealings with the corporation are subjected to rigorous scrutiny and where any of their contracts or engagements with the corporation is challenged the burden is on the director or stockholder not only to prove the good faith of the transaction but also to show its inherent fairness from the viewpoint of the corporation and those interested therein."

See also Hyams v. Calumet & Hecla Mining Co., 6 Cir., 221 F. 529, 537, "* * * the rule, independently of state or national anti-trust statutes, is fundamental that one in control of a majority of the stock and of the board of directors of a corporation occupies a fiduciary relation towards the minority stockholders, and is charged with the duty of exercising a high degree of good faith, care, and diligence for the protection of such minority interests. Every act in its own interest to the detriment of the holders of minority stock becomes a breach of duty and of trust, and entitles to plenary relief from a court of equity. Jackson v. Ludeling, 88 U.S. 616, 21 Wall. 616, 624, 625, 22 L.Ed. 492; Jones v. Electric Co., 8 Cir., 144 F. at page 771, [Missouri Edison] 75 C.C.A. 631; Wheeler v. Abilene, etc., Bldg. Co., 8 Cir., 159 F. 391, 394, 395, 89 C.C.A. 477, 16 L.R.A.,N.S., 892, 14 Ann.Cas. 917; 3 Clark & Marshall on Corporations, at page 2289." See in particular Lebold v. Inland Steel Co., 7 Cir., 125 F.2d 369. Cf. Lebold v. Inland S. S. Co., 7 Cir., 82 F.2d 351.

■ The law of the States in this respect is illustrated by such decisions as Singer

---

6 Emphasis added to all of the foregoing quotations from the Taylor case.

7 In Smith v. Southern Foundry Co., *supra*, a suit had been brought to compel, *inter alia*, the declaration of a dividend in favor of the preferred stock. The Court of appeals of Kentucky stated, 166 Ky. at page 213, 179 S.W. at page 207, "Dividends are payable out of the profits and surplus funds of the corporation as the directors may, in the exercise of a sound discretion, declare. Unless the directors are guilty of bad faith or a willful abuse of discretion, the courts will not interfere."

v. Carlisle, Sup., 26 N.Y.S.2d 172; Pearson v. Concord Railroad Corporation, 62 N.H. 537, 13 Am.St.Rep. 590; Miner v. Belle Isle Ice Co., 93 Mich. 97, 53 N.W. 218, 17 L.R.A. 412; Bailey v. Jacobs, 325 Pa. 187, 189 A. 320; Lofland v. Cahall, 13 Del.Ch. 384, 118 A. 1. See also 19 C.J.S., Corporations, § 764: "The directors owe a duty of managing the corporate affairs honestly and impartially in behalf of the corporation and all the stockholders * * *." See also Restatement of the Law of Trusts, Section 170. Most of the decisions cited were rendered under circumstances in which one corporation controlled another as in the case at bar. The means of control is of course immaterial. See Fletcher Cyclopedia Corporations, Permanent Ed., Vol. 13, Section 5842.

■ The law of Kentucky also demonstrates the fact that those in charge of a corporation stand in a fiduciary relation to its minority stockholders. In Graham v. Tom Moore Distillery Co., D.C.W.D. Ky., 42 F.Supp. 853, 855, 856, the District Court issued an injunction against the carrying out of a contract peculiarly advantageous to a majority holder of the corporation's stock but not to the corporation. Judge Miller, quoting from Venus Oil Corporation v. Gardner, [8] 244 Ky. 176, 50 S.W.2d 537, 538, went on to state "that it is * * * well settled by many Kentucky decisions that a person occupying a fiduciary or confidential relationship can not lawfully acquire any private interest of his own in opposition to his position of trust, and that transactions between fiduciaries and cestuis que trust are constructively fraudulent." Citing Hoge v. Kentucky River Coal Corp., 216 Ky. 51, 287 S.W. 226; Walker v. Carter, 208 Ky. 197, 270 S.W. 770; Clay v. Thomas, 191 Ky. 685, 231 S.W. 512; Louisville Point Lumber Co. v. Thompson, 202 Ky. 263, 259 S.W.

345. He also said, 42 F.Supp. at page 856, that a contract entered into by such parties as were there involved, viz., between the corporation itself and the majority stockholder, is "either constructively fraudulent or absolutely void regardless of whether or not actual fraud can be spelled out of the express provisions of the contract." Judge Miller is a judge of long experience in the interpretation of Kentucky law. See Huddleston v. Dwyer, 322 U.S. 232, 237, 64 S.Ct. 1015, 88 L.Ed. 1246.

■ Other Kentucky decisions hold that public policy forbids an agent to act for his principal in a matter involving the agent's private interest and that such a contract is void as between principal and agent. See Central West Casualty Co. v. Stewart, 248 Ky. 137, 58 S.W.2d 366; Weatherholt v. National Liberty Ins. Co., 204 Ky. 824, 265 S.W. 311; King Const. Co. v. Mary Helen Coal Corporation, 194 Ky. 435, 239 S.W. 799, and F. T. Gunther Grocery Co. v. Hazel, *supra*. In the Weatherholt case, 204 Ky. at page 826, 265 S.W. at page 312, the Court of Appeals of Kentucky quoted, " 'The law has too much regard for the infirmity of human nature to allow a person to be subjected to the temptation of acting as an agent in a matter in which he has an interest adverse to his principal. The law, dealing with the average integrity and disinterestedness, wisely assumes that no man can faithfully serve two masters whose interests are in conflict.' "

In Kirwan v. Parkway Distillery, 285 Ky. 605, 148 S.W.2d 720, 723, the Court of Appeals of Kentucky had before it the following facts. The majority stockholders of a corporation voted to dissolve it because the minority stockholders objected to a sale of the corporate assets. It appeared that the minority stockholders desired to obtain the book value of their stock in lieu of the pro-rata share of the funds remaining after the

[8] As follows: " 'The Court may not intervene or interfere in the internal affairs of a corporation at the instance of minority stockholders unless its governing authorities have acted or are threatening to act fraudulently, in the broad sense, against them or have abused the implied trust reposed in officers and directors in such manner or to such extent as to warrant the interposition of equity.' " [42 F.Supp. at page 855.]

Judge Miller also cited, as being to the same effect, decisions of the Court of Appeals of Kentucky in Manufacturers' Land & Improvement Co. v. Cleary, 121 Ky. 403, 89 S.W. 248; Haldeman v. Haldeman, 176 Ky. 635, 197 S.W. 376; Rice v. Thomas, 184 Ky. 168, 211 S.W. 428; and Carter v. Louisville Ry. Co., 238 Ky. 42, 36 S.W.2d 836.

sale of the corporate assets. The minority stockholders filed a bill to restrain the dissolution. The Court of Appeals of Kentucky sustained a demurrer to the complaint, stating in part: "It is claimed that the dissolution of Bonnie Bros. corporation subsequent to the contract of sale of its assets was done for the purpose of defeating the appellants' rights to the book value of their stock which was more remunerative to them than their proportionate shares of the assets under a dissolution of the corporation. Conceding that to be true, yet the stockholders when voting strictly as stockholders were still within their legal rights. In the case of Haldeman v. Haldeman et al., 176 Ky. 635, 197 S.W. 376, it is pointed out that *there is a radical difference when a stockholder is voting strictly as a stockholder and when voting as a director. When voting as a stockholder he has the legal right to vote with a view of his own benefits and is representing himself only; but, a director represents all the stockholders in the capacity of trustee for them and cannot use his office as director for his personal benefit at the expense of the stockholders. * * *

"To the same effect is Dudley v. Kentucky High-school, 72 Ky. 576, 9 Bush. 576. However, fraud may be an exception to these rules, but as we have already stated, no fraud is claimed or relied on in the case at bar."[9]

In the Haldeman case, [176 Ky. 635, 197 S.W. 381], cited in the Kirwan decision, the Court said: "A stockholder occupies a position and owes a duty radically different from a director. A stockholder may in a stockholders' meeting vote with the view of his own benefit; he represents himself only. But a director represents all the stockholders; he is a trustee for them; and he cannot use his office for his personal benefit at the expense of any stockholder." The Court ruled to like effect in the Dudley case, supra. See also Reinhardt v. Owensboro Planing Mill Co., 185 Ky. 600, 603, 215 S.W. 523, 524, "Directors are bound to exercise nothing short of the uberrima

fides of the civil law. *They must not in any degree allow their official conduct to be swayed by their private interest or welfare, unless that interest be one they have in the good of the company in common with all the stockholders."* [9]

In Pittsburg, C., C. & St. L. Ry. Co. v. Dodd, 115 Ky. 176, 194, 72 S.W. 822, 827, the Court said, "We go no further than to say that upon an allegation of fraud on the part of his directors, or upon an allegation of facts showing that the directors (who are also directors of another contracting corporation), *because of conflict of interest and duty, could not or ought not to act in the matter,* coupled with the further allegation showing material damage to the complaining stockholder by reason of the transaction between the two corporations, a court of equity will hear a single stockholder's complaint, and, if the charges be sustained by the proof, will grant appropriate relief."[9]

In Covington & Lexington Railroad Co. v. Bowler's Heirs, 72 Ky. 468, 489, the Court said, "From the moment that Bowler concluded to prepare for the purchase of the road *his personal interests became antagonistic to those of the corporation, and he should have ceased to act as a director.* Instead, however, of doing so, he held on to his position, and when we contemplate his official acts in the light of subsequent events we cannot avoid the conclusion that as a member of the board of directors his influence was used for the promotion of his personal ends. *Instead of looking alone to the interests of the stockholders and creditors of the company,* their rights were not only disregarded, but deliberately sacrificed, that profit might result to him." [9, 10]

There can be no doubt of the general law upon this question. It is succinctly stated in Thompson on Corporations, supra, Section 1337, as follows: "Very plainly a director is disqualified from voting on matters in which he has a personal interest or on matters concerning the personal interest of a director who controls

---

[9] Emphasis supplied.

[10] It is interesting to compare the circumstances of the Kentucky cases cited with those of Crimmins & Peirce Co. v.

Kidder Peabody Accept. Corp., 282 Mass. 367, 185 N.E. 383, 88 A.L.R. 1122, on which Transamerica lays much emphasis.

his vote. The rule is that any resolution passed at a meeting of the directors at which a director having a personal interest in the matter voted, will be voidable at the instance of the corporation or the stockholders, without regard to its fairness, where the vote of such directors was necessary to the passage of such resolution." It is clear that under the law of Kentucky the fiduciary relationship of directors is such that a court of equity will not permit them to make a profit of their trust and that directors of a corporation are required to manage and conduct their trust so as to realize whatever profit may accrue in the course of the business for the benefit of their cestuis que trust.

 It is appropriate to emphasize at this point that the right to call the Class A stock for redemption was confided by the charter of Axton-Fisher to the directors and not to the stockholders of that corporation. We must also re-emphasize the statement of the court in Haldeman v. Haldeman, supra, and its reiteration in Kirwan v. Parkway Distillery, supra, that there is a radical difference when a stockholder is voting strictly as a stockholder and when voting as a director; that when voting as a stockholder he may have the legal right to vote with a view of his own benefits and to represent himself only; but that when he votes as a director he represents all the stockholders in the capacity of a trustee for them and cannot use his office as a director for his personal benefit at the expense of the stockholders.

 Two theories are presented on one of which the case at bar must be decided: One, vigorously asserted by Transamerica and based on its interpretation of the decision in the Taylor case, is that the board of directors of Axton-Fisher, whether or not dominated by Transamerica, the principal Class B stockholder, at any time and for any purpose, might call the Class A stock for redemption; the other, asserted with equal vigor by Zahn, is that the board of directors of Axton-Fisher as fiduciaries were not entitled to favor Transamerica, the Class B stockholder, by employing the redemption provisions of the charter for its benefit.

We must of course treat the decision of the Court of Appeals of Kentucky in the Taylor case as evidence of what is the law of Kentucky. The Court took the position on that record that the directors at any time[11] might call the Class A stock for redemption and that the redemption provision of the charter was written as much for the benefit of the Class B stock as for the Class A stock.[12] It is argued by Transamerica very persuasively that what the Court of Appeals of Kentucky held was that when the Class A stock received its allocation of $60 a share plus accrued dividends it received its full due and that the directors had the right at any time to eliminate Class A stock from the corporate setup for the benefit of the Class B stock.[13] It does not appear from the opinion of the Court of Appeals of Kentucky whether or not the subsequent liquidation of Axton-Fisher was brought to the attention of the Court. But it is clear from the pleading that the subsequent liquidation was not an issue in the case and from the language of the Court there is some indication that it believed that Axton-Fisher was to continue in existence because Commissioner Stanley spoke of the elimination of the Class A stock, which possessed voting rights, from the management and control of Axton-Fisher. Such surmises are hazardous, however, and are not really apposite since it is our duty to determine the law of Kentucky and not to delve into subjective mental processes. It should be noted that Commissioner Stanley stated the justiciable controversy before the Court of Appeals of Kentucky as follows: "The case presents a novel question of power of

---

[11] The phrase used by the Court of Appeals of Kentucky was "at all times."

[12] The language used as quoted supra was as follows: "We think the provision for redemption of Class A stock was made as much for the one as for the other class. If it was not, then it was very delusive."

[13] The court said: "Manifestly, it was very much to the interest of the holders of Class B stock to have all these priorities, obligations and restrictions on and conditional joint control of the management eliminated. A substantial advantage was given to and acquired by the Class B stockholders * * *."

the board of directors of a corporation to rescind or modify its action in calling certain stock for redemption or retirement." This, and only this, was the question before the Court. It is notable that Commissioner Stanley said also that the acts of boards of directors "exercised in good faith and not in fraud of the rights of the stockholders" should not be interfered with by the courts and that he spoke as well of the "fair discretion" of directors to be exercised in the same manner as would be the case in the declaration of dividends, citing Smith v. Southern Foundry Co., referred to in the body of this opinion and in note 5 supra. We think that it is the settled law of Kentucky that directors may not declare or withhold the declaration of dividends for the purpose of personal profit or, by analogy, take any corporate action for such a purpose.

The difficulty in accepting Transamerica's contentions in the case at bar is that the directors of Axton-Fisher, if the allegations of the complaint be accepted as true, were the instruments of Transamerica, were directors voting in favor of their special interest, that of Transamerica, could not and did not exercise an independent judgment in calling the Class A stock, but made the call for the purpose of profiting their true principal, Transamerica. In short a puppet-puppeteer relationship existed between the directors of Axton-Fisher. and Transamerica.

The act of the board of directors in calling the Class A stock, an act which could have been legally consummated by a disinterested board of directors, was here effected at the direction of the principal Class B stockholder in order to profit it. Such a call is voidable in equity at the instance of a stockholder injured thereby. It must be pointed out that under the allegations of the complaint there was no reason for the redemption of the Class A stock to be followed by the liquidation of Axton-Fisher except to enable the Class B stock to profit at the expense of the Class A stock. As has been hereinbefore stated the function of the call was confided to the board of directors by the charter and was not vested by the charter in the stockholders of any class. It was the intention of the framers of Axton-Fisher's charter to require the board of directors to act disinterestedly if that body called the Class A stock, and to make the call with a due regard for its fiduciary obligations. If the allegations of the complaint be proved, it follows that the directors of Axton-Fisher, the instruments of Transamerica, have been derelict in that duty. Liability which flows from the dereliction must be imposed upon Transamerica which, under the allegations of the complaint, constituted the board of Axton-Fisher and controlled it.[14]

The *quantum* or extent of the breach of the fiduciary duty on the present record must be determined according to

---

14 The circumstances alleged in the case at bar are suggestive of those which were before the Court of Appeals for the Seventh Circuit in Lebold v. Inland Steel Co., supra. In the Lebold case the majority stockholders forced the dissolution of the corporation and thereafter themselves continued the highly profitable business which had belonged to the corporation. This conduct of the majority stockholders resulted in their acquiring the share of the profits of the corporate business to which the minority would have been entitled had the corporation continued in existence. The dissolution of the company was carried out precisely in the manner required by the law of West Virginia.

District Judge Lindley, speaking for the court, stated in part, 125 F.2d at pages 373, 374, "What defendant might have accomplished under color of the West

Virginia statute was discontinuance of the business. What it did, was to take, through form of a sale, the physical assets and the entire business of the Steamship Company. Whether we stamp the happenings as dissolution or with some other name, equity looks to the essential character and result to determine whether there has been faithlessness and fraud upon the part of the fiduciary. However proper a plan may be legally, a majority stockholder can not, under its color, appropriate a business belonging to a corporation to the detriment of the minority stockholder. The socalled dissolution was a mere device by means of which defendant appropriated for itself the transportation business of the Steamship Company to the detriment of plaintiffs. That the source of this power is found in a statute, supplies no reason for clothing it with a superior sanctity, or

the law of Delaware for the reasons hereinbefore stated. The reaction of the law of Delaware to such a course as that pursued here by Transamerica is suggested by such decisions of the Supreme Court of Delaware as Bovay v. H. M. Byllesby & Co., Del.Sup., 38 A.2d 808, and Keenan v. Eshleman, 23 Del.Ch. 234, 2 A.2d 904, 120 A.L.R. 227. But whether the law of Delaware [15] be applicable to determine the extent of the breach of fiduciary duty, or that of Kentucky or of New York, there will be found to be no substantial difference.[16] The remedies to be afforded by the District Court of the United States for the District of Delaware, of course, must be those which may be available under the law of Delaware. See Guaranty Trust Co. v. York, 326 U.S. 99, 65 S.Ct. 1464, 89 L.Ed. 2079, 160 A.L.R. 1231, and Overfield v. Pennroad Corporation, 3 Cir., 146 F.2d 889.

 As has been stated the plaintiff has endeavored to set up a "First Cause of Action" and a "Second Cause of Action" in his complaint. The first cause of action is based upon his ownership of shares of Class A stock not surrendered by him to Axton-Fisher for redemption and is asserted not only on his own behalf but also on behalf of other Class A stockholders retaining their stock. The second cause of action is asserted by him on his own behalf and on behalf of other Class A stockholders in respect to the value of the stock which was surrendered for redemption. The two alleged separate causes of action, however, are in reality one.[17] In our opinion, if the allegations of the complaint be proved, Zahn may maintain his cause of action to recover from Transamerica the value of the stock retained by him as that shall be represented by its aliquot share of the proceeds of Axton-Fisher on dissolution. It is also our opinion that he may maintain a cause of action to recover

---

vesting it with the attributes of tyranny. Allied Chemical & Dye Corp. v. Steel & Tube Co. of America, 14 Del. [Ch.] 1, 120 A. 486. The books are full of instances of disapproval of such action. If it be an absorption by the dominant member of all the returns of the corporate investment, or a sale of the property to one-self for an inadequate consideration, or deprivation by a syndicate formed to freeze out a minority stockholder through sale and dissolution or if the buyer and seller are the same, the right of a stockholder to vote becomes a power in trust when he owns the majority and assumes and exercises domination and control over corporate affairs. Such majority stockholders' vote 'must not be so antagonistic to the corporation as a whole as to indicate that their interests are wholly outside of the interest of the corporation and destructive of the interests of the minority shareholders.' Thurmond v. Paragon Colliery Co., 82 W.Va. 49, 95 S.E. 816. See, also, Jackson v. Ludeling, 21 Wall. 616, 88 U.S. 616, 22 L.Ed. 492; Lebold v. Inland Steamship Co., 7 Cir., 82 F.2d 351; Ervin v. Oregon Ry. & Nav. Co., C.C., 27 F. 625; Wheeler v. Abilene Nat. Bank, 10 Cir., 159 F. 391, 16 L.R.A.,N.S., 892, 14 Ann.Cas. 917; Lehigh Valley Transit Co. v. Zanes, 3 Cir., 46 F.2d 848; Jones v. Missouri-Edison Electric Co., 8 Cir., 144 F. 765; Wheeling & Lake Erie R. Co. v. Carpenter, 6 Cir., 218 F. 273; Board of Highway Commissioners v. Bloomington, 253 Ill. 164, 97 N.E. 280, Ann.Cas.1913A, 471; Dowling v. Charleston & W. C. R. Co., 105 S.C. 475, 81 S.E. 313; Rohrlich, 'Corporate Control by Minority Stockholders,' 81 Pa. Law Review 728."

For an interesting case of somewhat similar tenor, see Weisbecker v. Hosiery Patents, a decision of the Supreme Court of Pennsylvania, 356 Pa. 244, 51 A.2d 811.

[15] We have assumed that the operative facts took place in Delaware by virtue of the rule laid down in Black & Yates v. Mahogany Ass'n, supra. As we have stated the complaint does not allege where the acts complained of occurred. The proof may show that the acts complained of took place in Kentucky or in New York, in which event, the law of the *situs* would be applicable.

[16] The general law is set out in the Restatement, Restitution, Section 190. See *Comment a.* Fiduciary Relations.

[17] The second cause of action refers to the resolution of the board of directors of Axton-Fisher of June 16, 1943, hereinbefore referred to in this opinion, and the fact that that resolution was declared to be invalid by the Court of Appeals of Kentucky as has been stated. These facts are immaterial as we view the law applicable to the suit at bar. It is not within the jurisdiction of this court to pass upon the questions presented by the two resolutions, the effects of which were adjudicated by the Court of Appeals of Kentucky.

the difference between the amount received by him for the shares already surrendered and the amount which he would have received on liquidation of Axton-Fisher if he had not surrendered his stock.[18] For analogy see Lebold v. Inland Steel Co., supra; Jones v. Missouri-Edison Electric Co., 8 Cir., 144 F. 765; Id., 8 Cir., 199 F. 64, certiorari denied 229 U.S. 615, 33 S.Ct. 174, 57 L.Ed. 1352; Richardson v. Blue Grass Mining Co., D.C., 29 F.Supp. 658, and Willcox v. Harriman Securities Corporation, D.C., 10 F.Supp. 532.

■ We come now to the final questions presented by the appeal. Is Zahn entitled to maintain the action at bar as either an individual or a class suit? Transamerica contends that because Zahn acquired his shares of the Class A stock following the refusal of the Court of Appeals of Kentucky to permit modification of the redemption resolution, knowing the decision of that Court, he has no right to maintain the suit at bar either in an individual or a representative capacity; Transamerica asserts that the question whether a person need be a stockholder at the time of a transaction complained of, can arise either in a stockholders' *derivative* action or in a stockholders' *non-derivative* action and that in Kentucky the rule is the same in respect to both derivative and non-derivative actions. The rule, says Transamerica, is that a person must have been a stockholder at the time of the transaction complained of in order to have standing to sue. In support of its position Transamerica relies on two cases: Neff v. Gas & Electric Shop, 1929, 232 Ky. 66, 22 S.W.2d 265, and on Wright v. Swayne, 44 Ky. 441.

While a reading of the opinion in the Neff case leaves some doubt as to whether or not that suit was derivative or non-derivative,[19] the pleading [20] shows that it was a derivative action. In the Neff case the Court of Appeals of Kentucky held, *inter alia,* that a preferred stockholder, who had purchased his stock after the payment of an alleged illegal dividend to common stockholders, could not maintain a suit to recover the dividend for the corporation. It would appear therefore that the law of Kentucky, at least following the decision of the Court of Appeals of Kentucky in the Neff case, is in substance identical with that laid down in Rule 23(b) (1) of the Federal Rules of Civil Procedure, 28 U.S.C.A. following section 723c, in so far as, secondary or derivative class actions by shareholders are concerned. It follows, therefore, that if the suit at bar was a derivative one Zahn would not be entitled to maintain it. But the suit at bar is not a derivative one. Zahn is not suing for the benefit of Axton-Fisher but on his own behalf and on that of the other Class A stockholders. The Class A stockholders may look, as they do in the case at bar, directly to Transamerica which, for the reasons already stated, must be deemed to stand in a fiduciary relationship to them, for Transamerica took unto itself the remaining assets of Axton-Fisher, having caused that corporation to be dissolved by action of the board of directors of Axton-Fisher, those directors being subject to the dominion and control of Transamerica. It must be presumed that the dissolution of Axton-Fisher was consummated in accordance with the Kentucky law. See KRS § 271.300. The provisions of Rule 23(b) (1), 28 U.S.C.A. following section 723c, requiring the allegation that the plaintiff was a shareholder at the time of the transactions of which he complains, are inapplicable. It follows therefore that unless the decision in Wright v. Swayne prohibits Zahn from maintaining his suit, he may do so.

■ It is clear that in Wright v. Swayne, the plaintiff's suit was not a derivative one, nor as a matter of law was it a representative suit though this point is not germane to the question which we are now considering. Wright purchased his shares from an original purchaser of the stock from the promoters. Swayne was one of the promoters. The facts in the cited case are exceedingly complicated but it would appear that the alleged fraudulent repre-

---

[18] As to Zahn's present and past ownership of Class A stock see note 1, supra.

[19] In 148 A.L.R. 1091, the Neff case is described as a non-derivative action.

[20] We may take judicial notice of the pleadings in the Neff case since they are public documents.

sentations were made to the original purchasers of the stock and not to Wright and the Court of Appeals of Kentucky because of this held that Wright could not employ these representations as a basis for an injunction against Swayne. The Court of Appeals ruled that since Wright was not deceived he could not maintain a cause of action based on fraud. Chief Justice Ewing pointed out, 44 Ky. at pages 443, 444, that Wright had purchased his stock "with a full knowledge of all the facts in relation to the sales [of lots] that had been made, the condition and value of the lots, and of the certificates." Compare this statement with the allegations of the complaint in the instant case that Zahn purchased his Class A shares "without knowledge, information or notice of any of the facts hereinafter alleged to have been fraudulently committed by Transamerica. * * *" We think the decision in Wright v. Swayne amounts to nothing more than an expression of what must be universally regarded as the law, namely, that a plaintiff who seeks to maintain an action based on deceit must allege that he was deceived by representations made to him. We conclude that the decision in Wright v. Swayne will not bar Zahn's suit.

We can find no Kentucky case, and none has been cited to us, which holds that the stockholder of a corporation, who seeks to maintain an action based on circumstances like those alleged in the instant case, must have owned his stock at the time of the happening of the events complained of. The Kentucky law in this regard seems to correspond with that of the other States of the United States. Indeed even in respect to derivative actions asserted in the courts of the States, a few statutory enactments aside, there has been no requirement of ownership of the stock at the time

of the happening of the events complained of.[21] The law of Delaware in this connection is set out in Perrott v. United States Banking Corporation, D.C., 53 F. Supp. 953, 956, and it was not until July 1, 1946, when the Legislature of Kentucky passed the Act now contained in KRS § 271.605, that the Kentucky law provided that in a suit brought to enforce a secondary right on the part of one or more shareholders the plaintiff must allege ownership of the shares at the time of the transaction complained of. The Legislature of Kentucky has passed no act requiring a stockholder, who does not bring a derivative suit, to allege ownership of his shares at the time of the happening of the events complained of.

The final question is whether Zahn is entitled to maintain the suit at bar as a class suit. From what we have said it is apparent that we are of the opinion that Zahn is not disqualified to maintain the suit at bar because he was not a stockholder at the time of the happening of all of the events complained of. We conclude that he is entitled to maintain the suit if the allegations of paragraph 8 of the complaint be proven. That paragraph of the complaint referred to alleges that Zahn will insure adequate representation of the entire class of persons holding Class A stock of Axton-Fisher on and after April 30, 1943; that some 6,000 shares of Class A stock, at the time of the commencement of the instant suit, had not been delivered for redemption and that these shares are presently outstanding; that as regards both groups of Class A stockholders, viz., those who have delivered their stock for redemption and those who have not, the shareholders are so numerous and so scattered in residence throughout the country and their average holdings are so small

21 Just v. Idaho Canal & Improvement Co., 1909, 16 Idaho 639, 102 P. 381, at pages 382, 383, 133 Am.St.Rep. 140; 21 Harvard Law Review 195; Pollitz v. Gould, 202 N.Y. 11, 94 N.E. 1088, 38 L. R.A.,N.S., 988, Ann.Cas.1912D, 1008; Parsons v. Joseph, 92 Ala. 403, 8 So. 788; Harvey v. Meigs, 17 Cal.App. 353, 119 P. 941; City of Chicago v. Cameron, 22 Ill.App. 91, affirmed 120 Ill. 447, 11 N.E. 899; Forrester v. Boston & M.

Consol. Copper & Silver Min. Co., 21 Mont. 544, 55 P. 229; Winsor v. Bailey, 55 N.H. 218; General Inv. Co. v. Bethlehem Steel Corp., 87 N.J.Eq. 234, 100 A. 347; Rafferty v. Donnelly, 197 Pa. 423, 47 A. 202; Roberson v. Draney, 53 Utah 263, 178 P. 35; Seaton v. Grant, L.R. 2 Ch.App. 459 (1866) (Eng.); Bloxam v. Metropolitan Railway Co., L.R. 3 Ch. App. 337 (1867) (Eng.).

that it is impractical to bring them all before the court. It appears from the pleading therefore that the suit at bar is a "spurious" class suit of the sort authorized by Rule 23(a) (3) of the Federal Rules of Civil Procedure, 28 U.S.C.A. following section 723c. See Independence Shares Corporation v. Deckert, 3 Cir., 108 F.2d 51, 55, and National Hairdressers' & C. Ass'n v. Philad Co., D.C., 41 F.Supp. 701, 707, 708, and Moore's Federal Practice, Volume 2, p. 2241.

The judgment will be reversed.